WATTS *v.* SMYLIE. ET AL.

[76 South. 684, Division A.]

1. HABEAS CORPUS. *Custody of child. Right of mother.*

Upon the death of the father the duty of supporting the child devolves upon its mother, unless it possesses in its own right property sufficient for that purpose or is old enough and capable of earning its own living, and the mother is also entitled to its custody unless her character or surroundings are such as to unfit her therefor.

2. DIVORCE. *Custody of child. Rights of mother.*

Even though a mother failed to discharge her duty to her child during its father's lifetime, that fact would not absolve her from her moral and legal duty to support and care for it after its father's death, nor of itself alone deprive her of her right to its custody, after its father's death.

3. HABEAS CORPUS. *Judgment. Res judicata.*

Decrees in *habeas corpus* proceedings are *res adjudicata* only of the rights of the parties as the facts existed when the decree was rendered and not as they exist when the circumstances have changed.

APPEAL from the chancery court of Amite county. HON. R. W. CUTRER, Chancellor.

Proceedings in *habeas corpus* by Mrs. R. H. Watts against Mack Smylie and another. From a decree for defendants, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*F. D. Hewitt,* for appellant.

It is the law, and has been in the state of Mississippi through all the ages, that the parents, if they be worthy, are entitled to have the custody and possession of their children. In fact the evidence is so strong in favor of the appellant, and it seems the law is so plain that the decision of the court was most arbitrary and exceeded the bounds of sounds discretion. It seems that under the facts of this case that it is so plain that the decision of the court should be reversed that an extended argument would be unnecessary.

The true rule in cases of this kind is stated by WHIT-FIELD, C. J., in *Glidwell* v. *Morris,* 42 So. 537. The interest of the child is the controlling factor and the custody is determined solely by this question. In the case referred to Glidwell brought *habeas corpus* proceedings for the possession of his boy about two or three years old against the child's grandmother, Mrs. Jane Morris. The lower court awarded the custody of the child to its grandmother and the supreme court reversed that decision and gave the custody of the child to its father.

It is the law and has been that the father and mother or either of them, if they be living and suitable, should have the custody and possession of their children. *Moore* v. *Christian,* 56 Miss. 408, 31 American Report, 375.

In the instant case the testimony shows that the mother is in every way qualified, mentally, morally, spiritually and financially to rear and educate her boy; al-

though it is not denied that·the child, John A. Smylie, Jr., is at present in a good home.

The law applicable to case of this kind is very well discussed and analyzed in *Hibbette et al.* v. *Baines,* 29 So. 80. Citing case of *Wier* v. *Marley,* 199 Mo. 494, and 6 L. R. A. 672, and a great many other authorities cited in this case. Section 2409 of the Code of 1906, says: "The guardian of a minor whose father or mother is living and is a suitable person to have the custody of the minor shall not be entitled as against the parent to the custody of the ward." ·

In the present case the guardian of the estate was not given the custody of the ward but the boy was given by his father before his death to the aunts and uncles and the mother was deprived of her baby boy and had been for three years.

The minor was taken from his mother between the age of three and four years and was taken against her wishes and placed with relatives, who being good people in every respect, knew nothing about the love of children and had no experience in raising children and teaching them the correct ideas of life.

The child has been deprived of the love and devotion of his father and mother, he has been deprived of the association of his brother, and is without a playmate, so necessary and essential to the welfare and well-being of a boy.

If there be no dispute of the facts when the question of the custody of a child is involved and the mother is one party and a collateral relative the other, as in this case, there certainly is no dispute of the law that the mother is entitled to and has the natural and legal right to the custody of her child. *Hibbette* v. *Baines,* 29 So. 80.

We respectfully submit that the case should be reversed and judgment entered here awarding the appellant the custody of her child.

*C. T. Gordon* and *R. S. Stewart,* for appellee.

It will appear by reading the latter petition the one upon which this appeal is taken, that the petitioner ask for a writ of *habeas corpus,* and did not file a bill of review or for review, but filed the petition *de novo,* and asked a vacation of the former decrees rendered in this matter; one while Mrs. Watts was the widow Smylie, and the other after she had married Mr. Watts, and in both of which decrees she was denied the custody of the minor, and in the second decree the bill was dismissed outright, and no appeal was taken from the same but appellant instead filed another original bill.

We submit first as a proposition of law, that the decree of the chancellor is right upon the pleadings, and any other decree, or a decree amending, vacating or avoiding the former decrees, could not have been granted, for there is no way to collaterally attack a decree; no motion was made or entered asking the cause to be remanded to the docket for further proof but simply a straight out and out bill filed to go over and rehash the same case that at least once had been heard.

The matters charged in this latter petition had twice been before the court, and in the first instance a temporary decree was granted, and in a petition to reopen this, a final decree was granted, dismissing the bill and taxing the complainant or petitioner with the cost but not satisfied, and directly in the face of this decree, another petition is filed, over the same matter, alleging substantially the same facts, and predicated upon the same grounds of action.

And we submit that the chancellor was correct in denying the relief therein prayed for, and in dismissing this third petition. It cannot be urged here that the bill was in effect a bill of review for under the facts as therein stated a bill of review cannot lie and a dismissal of the bill would have been proper.

"Bills of review will lie only for error of law appearing on the face or upon some new matter discovered after the decree and which could not possibly be used when the decree was made. *Vaughn* v. *Cutrer,* 49 Miss. 782; *Mayo* v. *Clancy,* 57 Miss. 674, and many other authorities.

Commencing with the case of *Foster* v. *Alston,* reported in 6th Howard, page 406, and decided in April, 1860, up to and including the last utterance by this court upon the custody of infants or minors, the court has uniformly held that the question of custody is to be determined solely upon the interest of the child or its best interest. See *Cocke* v. *Hannum,* 39 Miss. 423: *Maples* v. *Maples,* 49 Miss. 393; *McShan* v. *McShan,* 56 Miss. 413; *Fullilove* v. *Fullilove,* 62 Miss. 11; *Gildwell* v. *Morris,* 89 Miss. 82; *Wallace* v. *Wallace,* 46 So. 398; and *O'Neal,* v. *O'Neal,* 48 So. 623.

And in a number of these cases the question as to the paramount right of father or mother to the custody of the child has been involved but in each instance, this paramount or supposedly paramount right of the one as against the other has given away to the "polar star" towit: What is the best for the infant, or where would it be best circumstanced for the present and future?

The respondent did not undertake in the instant case to show the mother unworthy, did not undertake to show his superior ability, but did show that it was in a good home, that it was being cared for, and if carried with its mother, as she admitted, it would be a dependent upon a step-father who had never seen it or known it, and who had never manifested any interest in it at all, while if left where it was, it would be with an uncle, cared for and watched over by aunts, blood of its blood, flesh of its flesh, who loved it for itself and for their dead brother's sake.

The evidence, and the pleadings show that the mother lost her right when she dismissed her demand in the

court for the minor and permitted the father to bring
it from Jackson to Amite county where it remained in
the charge and care of its uncles and aunts who have
taken a mother's place, the only mother the boy has ever
known who he says that he loves and wants to stay with.
Was the court wrong under the facts or the law in say-
ing to this mother, you are the same person who had a
chance to demand the baby when he needed your care,
your love and attention, but forewent that chance and
that right in order to get a divorce, and now since other
hands have taken your place, since others have worked
for and loved and watched over your baby, you must
now leave him where it appears best for him.  The court
was within its discretion in such matters as these in
looking into the past, present and future conditions and
circumstances and in saying whether or not it was or
would be best for the child that he be forced against
his little will, to leave those who had been good to him
and whom he loved and go to those who are strangers
to him. *McShan* v. *McShan,* 56 Miss. 413.  In the case
of *Wallace* v. *Wallace,* 46 So. 398, the court as against
the father's supposedly paramount right to his child,
left it in the custody of the mother, though an invalid
and whose end was expected soon, but who was looked
after by her parents who were willing and able to help
her and support and care for the child, and in passing
said: "But in view of the fact that the grandmother and
grandfather are closer to the child than the brothers of
the father, who was to aid in its support and in view of
the further fact that the child had spent practically all
of its life in the immediate locality of its grandparents,
and under their eye, it was best for the child to remain
where it was." If so, if the grandparents who were will-
ing to care for it, were to be preferred as against the
child's uncle, then much the more should the uncle and
aunt be preferred to a stepfather, be he ever so good,
loyal and true.

Counsel for appellant lays a deal of stress upon the case of *Hibbette* v. *Baines,* 29 So. 80, but the facts in that case and upon which the father was awarded the custody of his children are so different from the facts here until the case is not applicable. In that case the father visited the children two or three times a year, and sent them money every month, even when he had bankrupted, and in every way showed that he was separated from his children simply because of the fact that his wife had died, and so soon as he had a home, and some one to look after it, he demanded them. But in the instant case, Mr. Smylie swears that the mother never sent her baby anything, never gave him clothes or made them for him, never came to see him, had nothing to do with him and while the mother contradicts this some, the court being the judge of facts, inclined to the respondent's version of the matter and so held. Too, the ties between the father and his children in the first case were kept alive, warm and strong by his frequent visits to them, by his presents to them, and his support of them, while in the instant case all such is utterly lacking.

In this case above cited, are found numerous authorities from other states, the facts in which in several instances or in many essentials similar to the facts in this instant case and in each of those cases the petition was denied.

After all is said, the main issue is, what was best for the child, then, what is the best now, and basing the future upon the past, what is best for the child in the future? Regardless of what a penitent mother may now say, back of all present pretensions, stands, ghost-like, the fact that when the baby needed mamma, she was willing and ready too, and did, surrender it to its father for a divorce.

SMITH, C. J., delivered the opinion of the court.

Appellant was formerly the wife of John A. Smylie, now deceased, of which marriage there was born in April, 1908, one child, John A. Smylie, Jr., the subject of this controversy. In May, 1912, she was granted a divorce from Smylie, the decree so adjudging containing no provision relative to the custody of the child, which was then about four years old, but the father retained its custody, by agreement with appellant, and placed it with appellees, his brother and sister, who gave him its board, he bearing its other expenses. The separation of appellant and Smylie occurred in the city of Jackson, where she continued to live during most if not all, of the time thereafter and prior to Smylie's death; but he removed to Amite county, taking the child with him, in which county appellees also reside. After their separation Smylie carried the child to see its mother three or four times. Smylie died on the 17th day of March, 1914, and on the 28th day of March appellant sued out a writ of *habeas corpus* before the chancellor, praying for the custody of the child, to which its uncle, Mack Smylie, only, was made defendant, resulting in a decree on the 3d day of the following month reciting that:

"The minor, John A. Smylie, be and for the present remain in the custody, charge, and care of the said Mack Smylie, the respondent herein. It is ordered further by the court, however, if it shall in the future appear that the relator is able financially, and so situated and proves herself a fit and proper person to have the charge, custody of the said minor and to care for it, in such manner as is best suited for the welfare, and future training, and nurture of the said minor, then in that event, the court orders further that the order this day given may be modified, changed, and altered so as to meet the law and facts that may be brought out in case said matter is reheard."

At that time appellant was without means of support except her own labor, but shortly thereafter she married R. H. Watts, her present husband, and thereupon filed another petition before the chancellor who rendered the former decree, setting up that fact, and praying that she be given the custody of the child, but which was again denied her by decree rendered on July 7, 1914. On the 10th day of june, 1916, she filed a third petition before the same chancellor, praying for, and was again denied, the custody of the child, and from the decree then rendered this appeal is taken.

Appellees, the child's parternal uncle and aunt, in whose care the father placed it, are people of high character, are properly caring for the child, and seem to earnestly and honestly desire to continue so to do. The child, who at the time of the trial was eight years old, is happy and contented and desires to remain with them.

Appellant and her husband are also people of equally high character, are happily married, and have a comfortable and well-regulated home. The desire of the wife to have the child with her meets with the husband's approval, and there is nothing in the record to indicate that this desire on the part of appellant for the custody of the child is promoted by any motive other than parental affection and the desire to discharge that duty to rear and care for it which is imposed upon her by the laws of both God and man.

Upon the death of the father the duty of supporting the child devolves upon its mother, unless it is possessed in its own right of property sufficient for that purpose, or is old enough and capable of earning its own living, and she also is entitled to its custody unless her character or surroundings are such as to unfit her therefor.

"A parent who is of good character and a proper person to have the custody of the child and reasonably able to provide for it is entitled to the custody as against other persons, although such others are much attached

to the child, and the child is attached to them, and prefers to remain with them, and they are in all respects suitable to have the custody of the child and able to support and care for it, and even though they are of larger fortune or able to provide for the child more comfortably than the parent, or to care for it better, or to give it a better education than the parent can afford." 29 Cyc. 1590; *Moore* v. *Christian,* 56 Miss. 408, 31 Am. Rep. 375; *Hibbette* v. *Baines,* 78 Miss. 695, 29 So. 80, 51 L. R. A. 839.

But it is said by counsel for appellees that appellant abandoned her child and thereby not only waived her right to, but demonstrated her unfitness for, its custody. The conduct of appellee cannot be so construed. All she did was to surrender the custody of the child to its father, whose right thereto was, to say the least, equal to hers, who, in addition, was charged by law with its support and maintenance, and who in the absence of evidence to the contrary, she had the right to presume would properly care for and support it. But even if she did fail to discharge her duty to the child during its father's lifetime, that fact would not absolve her from her moral and legal duty to support and care for it after its father's death, nor of itself alone deprived her of her right to its custody, which right she attempted to assert immediately after the father's death.

It is true:

"That the welfare and best interests of the child are the controlling elements in the determination of all disputes as to the custody. But nevertheless the court should always give the custody to the person having the legal right thereto, unless the circumstances of the case justify it, acting for the welfare of the child, in decreeing the custody elsewhere." 29 Cyc. 1594; *Hibbette* v. *Baines,* 78 Miss. 695, 29 So. 80, 51 L. R. A. 839.

It follows from the foregoing views that appellant is beyond doubt entitled to the custody of her child unless, as claimed by counsel for appellees, the former

decrees are *res judicata* of her claim thereto. Even though the first decree rendered herein had not reserved to the court the power to thereafter modify its decree, under all of the authorities the former decrees rendered herein are *res judicata* only of the rights of the parties hereto as the facts then existed, and not as they exist two years afterwards when appellant's circumstances have changed, at least to the extent that it has now been demonstrated that the home which her present husband has made for her is and will continue to be such as will justify the court in awarding her the custody of the child.

*Reversed, and decree here for appellant.*