STEGALL (BLAYLOCK) *v.* STEGALL.*

(Division A.   Jan. 14, 1929.)

[119 So. 802.   No. 27474.]

876

*Corpus Juris-Cyc. References: Character, 11CJ, p. 289, n. 16, 33; Parent and Child, 46CJ, section 9, p. 1224, n. 77; section 11, p. 1231, n. 19; section 21, p. 1247, n. 59; section 29, p. 1251, n. 13; section 31, p. 1253, n. 44; As to effect of death of father on mother's right to guardian of minor child, see 12 R. C. L. 1107; On right to use of writ of *habeas corpus* to determine custody of child, see 12 R. C. L. 1215; 4 R. C. L. Supp. 790.

*Bratton & Mitchell,* for appellant.

*Fontaine & Adams,* for appellee.

Argued orally by *C. A. Bratton,* for appellant.

McGOWEN, J.   J. Solomon Stegall, appellee here, filed his petition before the circuit judge of Pontotoc county against Mrs. Louise Stegall (Blaylock), praying for the custody of Lavada Stegall, then alleged to be in the custody of her mother, Louise Stegall (Blaylock), appellant

here. The petition alleged that appellant was a woman of loose virtue and chastity, and of bad reputation in the community in which she lived, and was wholly unfitted morally and socially to have the custody and rearing of said minor child. The petition further alleged that Louise Stegall (Blaylock) was under an indictment by the grand jury of the county for the willful murder of her husband, H. W. Stegall, who was the father of her minor child, and son of the appellee, petitioner in the court below. The petition further alleged that petitioner was fitted morally and financially, and was anxious, to have the rearing and education of said minor "under moral, Christian influences." A writ was issued and served, and Mrs. Louise Stegall (Blaylock) came into court, and admitted that she had the custody of the minor child, Lavada Stegall, by virtue of the fact that she was the mother of said child, able financially, and not disqualified morally or otherwise, to have the care and custody of said minor child. It was further alleged that petitioner, J. Solomon Stegall, was a nonresident, and that, if the custody of the child was awarded to him, said child would be carried beyond the jurisdiction of the court. The court below held that Mrs. Louise Stegall (Blaylock), the mother, was unfit, morally, to have the custody of her minor child, and awarded the custody thereof to the grandfather, J. Solomon Stegall, appellee here, requiring said appellee to execute a bond in the sum of two thousand five hundred dollars, conditioned that he would produce the child, at any time he was notified so to do, before the court, and providing for a deposit of cash with the clerk in lieu of a bond. From this judgment in *habeas corpus,* Mrs. Louise Stegall (Blaylock) prosecutes an appeal here.

The evidence in the case is to the effect that W. H. Stegall and the defendant, appellant here, were respectively the father and mother of said minor child, Lavada Stegall, born in wedlock, and that some time prior to

the institution of this proceeding the said H. W. Stegall died; that both parties to this proceeding are amply able financially to take care of and rear the child. The child, at the time of the trial, was about nine years of age, a little girl who attended the public school and Sunday sc¹ ool of the town. Quite a number of witnesses testif d that they knew the reputation of Mrs. Louise Stegall (Blaylock), appellant here, in that community, for chastity and virtue, and that it was bad.

On the examination of the first witness, the court asked him to express an opinion as to the effect of permitting the mother to have the custody of her minor child, to which there was objection and exception, and thereafter practically all the witnesses expressed opinions as to the fitness of Mrs. Louise Stegall (Blaylock), the mother, to have the child, and, in the main, the replies were adverse to her. Every witness who testified to her bad reputation also stated that they had never known of her engaging in any conduct indicating unchastity or immorality, and, in the main, testified that, so far as their observation went, they had never seen her conduct herself improperly. Some of the witnesses denominated her reputation as "gossip." Only one witness testified as to having heard of a specific act of immorality as reported to him by one Suddoth, who had told the witness that he saw Mrs. Stegall and Blaylock in the woods. It developed she had secretly married Blaylock. The record does not disclose that Blaylock and Mrs. Louise Stegall were engaged in any immoral act. That seems to have been taken for granted. However, this testimony was hearsay, brought out on cross-examination. There was no single bit of testimony showing, or tending to show, any immoral acts or circumstances showing or tending to show that Mrs. Louise Stegall (Blaylock) was unchaste or immoral. Appellee's case rested solely and alone upon the bad reputation of the mother of the child, the appellant here, in that com-

munity. As we have stated, the appellant was under indictment for the murder of her former husband, H. W. Stegall, but the record is absolutely silent as to what disposition was made of that indictment. Mrs. Louise Stegall (Blaylock) did not testify as a witness.

The appellant assigns two reasons for reversal of this case: (1) That the judgment in *habeas corpus* was a final, conclusive, judgment, and deprived a citizen of this state of the right to remain therein, and transferred the residence of the child to another state; (2) that the evidence in the case was not sufficient to support the finding of the court.

We shall consider only the second of these assignments of error as stated by us, *supra,* and we are of the opinion that the evidence, as a whole, was insufficient to support the judgment rendered by the court below depriving the mother of the custody of her child.

Under the common law, the father's right, in the absence of abandonment or immoral conduct, was absolute to the custody of his child, and, as the wedded pair were considered a unit, the rights of both parts of the unit were to be exercised by the husband alone. In England, a more humane policy has been established by statute, but the common law was recognized, in a modified sense, in early decisions and up to now. The interest of the child is regarded as a factor to be considered in determining the question. Upon the death of the father, it is now well settled that the mother has the right to the custody of her child as against any other person who asserts a claim thereto, unless there has been an abandonment of the child, or the mother has forfeited her right *by immoral conduct.* This view of the law is well settled in our jurisprudence, the last case on the subject being *Nickle* v. *Burnett,* 122 Miss. 56, 84 So. 138, in which case, Judge ETHRIDGE, as the organ of the court, said:

"We think, as against all save the mother, the father has the supreme right to the control and custody of his

child unless he has forfeited this right by immoral conduct, or by an abandonment of the child."

Also see *Foster* v. *Alston,* 6 How. 406, and *Hibbette* v. *Baines,* 78 Miss. 721, 29 So. 80, 51 L. R. A. 839.

As against the mother, the paternal grandfather has no right, unless and until it is shown that the mother has forfeited her right to her child by abandonment, *or by immoral conduct.* It is presumed that the best interest of the child will be preserved by its remaining with its parents or parent until the well-recognized exceptions have been established. *Kinnaird* v. *Lowery,* 102 Miss. 559, 59 So. 843.

The lower court held that proof of a bad reputation unsupported by any act of immorality or misconduct, or circumstances tending to show immorality or unchastity, was sufficient to establish immoral conduct on the part of appellant, and therefore to deprive her of the custody of her child, to which she had a natural and legal right as against all the world, except the husband. To this we cannot subscribe.

" 'Reputation' is what people say of a man, whereas character is what he is." 4 Words and Phrases, Second Series, p. 291, citing *People* v. *Montgomery,* 176 N. Y. 219, 68 N. E. 258.

" 'Character' signifies the reality, and 'reputation' merely what is reputed or understood from report to be the reality about a person or thing." 4 Words and Phrases, Second Series, p. 290, citing *Woodruff* v. *State,* 72 Neb. 815, 101 N. W. 1114.

"A person's 'reputation' and 'character' are not the same. Reputation as evidence may tend to prove character; but a man may in fact have a good character while suffering from a bad reputation." 4 Words and Phrases, Second Series, p. 289, citing *Curtice* v. *Dixon,* 74 N. H. 393, 68 A. 589.

Evidence of the general reputation of a person for a given trait in proper cases is competent, but, in a case

where the chastity of a person is the main issue, such evidence is intrinsically weak, and, where no facts or circumstances are shown independent of a bad reputation, it is insufficient to establish the main fact of unchastity or immoral conduct.

In 22 C. J., p. 482, we find this concise and terse statement of the rule: ''Evidence of specific acts of unchastity is rejected where the inquiry is as to reputation directly, or as to character in the sense of reputation, but where actual chastity, as distinguished from reputation in this respect, is in issue, proof of specific acts of unchastity is the very best evidence and is accordingly received, and it has even been held that under such circumstances proof of specific acts is the only proper method of proving unchastity.''

We think the evidence of reputation is competent to support other evidence tending to show the existence of the ultimate fact, but not sufficient to establish the ultimate fact, where the unchastity of a parent involves the right of such parent to the custody of his child. This view is supported by 22 C. J., p. 478, section 572, from which we quote the following: ''Evidence of common reputation in the community is entirely proper when the reputation is itself the ultimate fact, but as proof of actual character, such evidence is probatively weak, and, on many occasions, inaccurate and misleading.''

In the case at bar, the writer of this opinion knows personally many of the witnesses who testified to the bad reputation of Mrs. Louise Stegall (Blaylock), and that they fairly reflected the sentiment of that community, not only as to the reputation of the appellant, but also as to what disposition the court should make of the child. We do not approve the line of questions permitted in this case which sought to have the witnesses express opinions far beyond those permitted by the rule as to general reputation. The reputation of the appellant, as heretofore demonstrated by us, was not the is-

sue. The issue here was the real moral character and moral conduct of appellant as related to her right to her own child, and it would be an unsafe rule to adopt that either parent, or both, might be deprived of their natural and legal right to the custody of their children upon proof merely of a bad reputation; for the courts cannot raise a standard for one parent that they would not raise for the other. The satisfaction and benefits of the care and custody of children to parents must be preserved as well as to have imposed upon them the cares and duties necessary to their maintenance and education.

A reputation for unchastity may be deservedly acquired, because of a single immoral act committed in a moment of weakness, and yet, at the time when the issue is raised, the appellant may be perfectly capable, so far as the law is concerned, of rearing and educating his or her own child.

Evidence of a reputation for chastity is competent. See *Wilkerson* v. *State,* 106 Miss. 633, 64 So. 420; *King* v. *State,* 121 Miss. 230, 83 So. 164; and *Kolb* v. *State,* 129 Miss. 834, 93 So. 358. While this is true, and evidence of a reputation tends to establish evidence of a real character, it is neither conclusive nor very persuasive as against a parent, where the custody of that parent's child is involved in a contest with a stranger.

Shakespeare puts it: "Reputation is an idle and most false imposition, oft got without merit, and lost without deserving," while another writer puts it thus: "A man's reputation is not in his own keeping, but lies at the mercy of the profligacy of others—calumny requires no proof."

According, as we do, to the judgment of the lower court all the weight which it deserved, we cannot agree therewith, because the evidence, taken as a whole, is insufficient to support the judgment, in addition to the fact that the judgment of the lower court sent the child away from the home of its mother, into another state, which must be taken into consideration in determining

the right to the custody of the child on a *habeas corpus* hearing. See *Duncan* v. *Duncan*, 119 Miss. 271, 80 So. 697.

It follows from these views that the court below was in error in awarding the custody of the child to the paternal grandparent; the mother was entitled to the custody of her child, and therefore the petition for the writ of *habeas corpus* will be dismissed, and judgment entered here for the appellant.

*Reversed, and judgment here for the appellant.*