CASSELL *v.* CASSELL.

Division A.　June 11, 1951.

No. 37973　(52 So. (2d) 918)

John W. Dulaney, and Brewer & Brewer, for appellant.

W. W. Simmons, for appellee.

**Lee, J.**

Mrs. Mildred Isaacson Wasserman, formerly Mrs. Mildred Isaacson Cassell, and Phillip Cassell were divorced by a decree of the Chancery Court of Coahoma County on November 20, 1945. The exclusive care and custody of the sole offspring of the marriage, Sidney Lee Cassell, a boy six months of age, was awarded to the mother.

On December 29, 1949, at a time when the boy was less than 5 years of age, Cassell filed his petition for a modification of the custodial decree so as to permit him to visit the boy and take him to his home in New York City at stated intervals. The answer objected to the modification, denied that there had been any change justifying it, and averred that the boy's removal to New York would be against his best interests. On final hearing, the court modified the original decree so as to authorize Cassell to have the custody of the boy on the 1st day of July of each year for a period of thirty days, and to take him to New York. The court required the execution of bond in the sum of $1,000 conditioned for the return of the boy to his mother on the 1st day of August of each year. From the decree entered, Mrs. Wasserman appealed.

The record discloses that the father and mother of this boy are of the Jewish faith. The former is Orthodox, and the latter is Reformed. Deep-seated differences exist between these sects. The Orthodox Jews teach and practice the ancient rituals, while the Reformed branch

does not practice such observances. For instance, there is the practice of Mikvah, a cleansing ordinance which is observed following the menstrual period. Religious differences were the underlying cause for the disruption of the marriage. Cassell was in the Army, and came home on furlough in July 1945. At that time, the boy was about two months old. The mother and boy lived with the mother's parents at Clarksdale. Cassell obtained his discharge at San Antonio, Texas, on September 8 following. However, he did not return to his wife and son, but went instead to his home in New York City. Shortly afterward, he was served with process in a divorce action but he made no contest.

Cassell successfully contended in the court below, and contends here, that the modification should be granted for three reasons: (1) The age of the child had increased from six months to five years at the time of trial. (2) Mrs. Cassell had remarried. (3) He had become adjusted to civilian life, and is now in position to provide a proper home for his boy.

On these propositions, the proof was as follows: Cassell has never seen his son since he was two months old. He has never written or visited him, nor has he sought the right to do so. He did contribute to the boy's support for about a year after his discharge from the Army, and at times, sent him presents. His excuse for failure to visit after his discharge, when he was nearby, was his eagerness to get to New York and prepare a home. He testified that he was earning $45 a week; that he had investments of $9,500, with savings of $3,000, and $500 in stocks; and that he had started an educational fund for his son. He has a room in his brother's three room apartment, in an average neighborhood, in the Bronx. He at one time practiced law, but had been disbarred. A brother, who is a practicing attorney, testified that Cassell's honesty is beyond reproach, and that he is a suitable person to have the custody. A deposition by another brother and his wife was to the effect that they would be happy to

have the nephew in their home. The desire is that the father and son shall become acquainted.

For the appellant, it is contended that the evidence, and the inferences therefrom, show the following facts: (a) Her fitness and suitability to the continued custody of the child is admitted. (b) The record does not show that the welfare of the boy requires a change in his environment at this time. (c) The drastic change in environment from a rural community to the world's largest city would not be for the best interest of the boy. (d) The absence of maternal affection, under such circumstances, for thirty days would be hurtful and result in great heartaches to him. (e) Although appellee is the father, actually he is a rank stranger to his son. The same is true of the relatives where he would live. (f) Appellant's remarriage has had no deteriorating effect on her custodial care, or the best interest of her son. In fact, her present husband has such affection for the boy that he offered to adopt him as his own son. (g) If there had been previous visits so that the boy had some conception of paternal love and care from his father, a different situation would exist. But the father has not seen his son since the latter was two months old, and the son has never known his father. (h) The sudden taking of this small boy by a rank stranger—although actually his father—away from his mother, who, in his eyes, is doubtless the summum bonum of his life, to a large city 1,000 miles away, for thirty days among rank strangers—although his actual kin—could be catastrophic upon his life.

It must be kept in mind that it is not, and cannot be, said dogmatically that the proposed change will be for the best interest of the boy. The greatest persuasion is that it will gratify the father's desire to become acquainted with his son.

Likewise, it must be remembered that, while bond for the return of the child to the State is required, we must not shut our eyes to the possibility of its forfeiture, with

the attendant consequences. It was recognized in Campbell v. Lovgren, 175 Miss. 4, 166 So. 365, 367, that the Court had power to modify a custodial decree so as to permit the mother to take an eleven year old child out of the State from July 1 to August 15 of each year. The opinion said however that "such power should be exercised with caution, and under proper restrictions," though that feature should not be permitted to defeat, by its denial, the controlling consideration of conserving the best interest of the child.

In that case, this Court said that such a decree is entitled to full faith and credit in another state, under Section 1, Article 4, U. S. Constitution. But for a contrary view compare Haynie v. Hudgins, 122 Miss. 838, 85 So. 99, and the cases there cited.

██ █ In awarding custody of a minor child, the welfare and best interests of such child are of chief importance and the prime considerations. 39 Am. Jur. 607, Section 20, Parent and Child; 67 C. J. S., Parent and Child, Section 12a, page 646; Duncan v. Duncan, 119 Miss. 271, 80 So. 697; Evans v. Evans, 195 Miss. 320, 15 So. (2d) 698; Haynie v. Hudgins, supra.

It is generally recognized that ██ █ orders in divorce proceedings as to the custody of minor children are subject to modification. But, "A decree fixing the custody of a child is, however, final on the conditions then existing and should not be changed afterward unless on altered conditions since the decree . . . and then only for the welfare of the child." 17 Am. Jur. 519, Section 684, Divorce and Separation.

Since the original decree, the boy has aged only from six months to six years. Although the appellant has remarried, such fact has had no deteriorating effect upon him. On the contrary, his environment has been wholesome. The appellee's acquisition of some financial responsibility, and, therefore, the ability to provide a home for his son during the thirty day period is not necessarily controlling. ██ █ And unless and until there is a

material change in the circumstances, the original decree is res judicata. Savell v. Savell, Miss., 49 So. (2d) 726.

In McManus v. St. Dizier, 174 Miss. 344, 164 So. 407, 408, this Court cited Campbell v. Campbell, 159 Miss. 708, 132 So. 324, and observed that it was there held that "a judgment in habeas corpus proceedings between husband and wife adjudicating custody of child is res adjudicata on that issue as to all facts existing at or before the time of the rendition of said judgment." Watts v. Smylie, 116 Miss. 12, 76 So. 684, was also cited. The Court then went further and said that "the same principle applies, of course, to a judgment or decree rendered in any competent proceeding, by any court of competent and full jurisdiction, in respect to such custody."

In Campbell v. Lovgren, supra, the mother and father had lived together until the boy was five years old. After separation, he was in his mother's custody, and had lived with her in Chicago for about two months. Subsequently, after the father had obtained legal custody by habeas corpus, and after the mother had thereafter obtained a divorce, by the latter decree she was permitted to visit him at any reasonable time, send him presents, write to him, and have his custody for thirty days of each year, provided she kept him in the state. The only modification there made was the extension of the time for two weeks, and the allowance of his removal from the state during that time. Moreover, in that case, there had been a close association between the mother and boy during all of his life, and he was then eleven years of age. Besides, at his then age, living in a large city for several weeks could possess an educational value.

In Evans v. Evans, supra, the father and mother were divorced when the boy was seven years old. Of course, he had previously been with both parents all of his life. The first decree awarded to the father, to a large extent, the custody of the boy. The following year, the decree was modified to the extent that the father had custody only on Sunday afternoons from 1 to 6 o'clock. At a sub-

sequent term, there was a further modification which allowed the father exclusive custody for the month of July. The trial court found that the boy was then almost nine years old; that he was devoted to his father; that he loved to go on horseback trips with his father; that both father and son desired to go on business trips together; and that such plans were defeated on account of the fact that the father had previously had custody for the limited time on Sunday afternoons. The Court called attention to 39 Am. Jur. 607, Section 20, as follows: "In any contest concerning the custody of a minor child, the best interests and welfare of the child are the matters of chief importance." [195 Miss. 320, 15 So. (2d) 699.] Besides, with the changing conditions of society, keeping in mind as paramount the best interest and welfare of the child, it is necessary to reconsider such awards, when the circumstances of the case have changed.

If the appellee lived in the same community or area, so that, if the exigencies of the case should require, the boy would be accessible to his mother during the thirty day period, it could perhaps be said that the modification is not unreasonable. Or, if the boy had reached such maturity and development that he could appreciate and comprehend the ways and places of interest in a city like New York, the modification could be sustained as affording the benefit of travel, and thus educational and promotive of the best interest of the child. There are no such circumstances here. The appellee does not even live in this State, much less in the same community or area, and the boy is of such tender age that he could have no comprehension of, and would receive little educational or other benefit from, residing for thirty days in a large city. The potential benefits to be derived from such an experience are slight. On the contrary, the reasonable conclusion is that such an experience would be detrimental to his best interests.

The evidence in this case is not, in fact, conflicting. The showing as to the present financial condition

of the appellee is not controverted. We assume that it is true.

The rule, which requires an affirmance of the decree of the trial court, where the evidence is conflicting, and where such decree is sustained by substantial evidence, is not applicable here. As was said by us in Eggleston v. Landrum, Miss., 50 So. (2d) 364, 367, "On this appeal, in review, we sit as chancellors".

 The remarriage of the mother has not adversely affected the best interest of the boy. Neither is the change in age enough to justify a change in custody, nor, under the circumstances, does the mere increase in the financial responsibility of the appellee suffice. In our view, the proof was insufficient to justify the modification at this time.

Wherefore, the decree of the learned chancellor is reversed, and a decree will be entered here, dismissing the petition.

Reversed and decree here.