MITCHELL, et al. *v.* POWELL, et al.

No. 43628 November 8, 1965 179 So. 2d 811

*Roberts & Craig,* Oxford, for appellants.

*Sumners & Hickman,* Oxford, for appellees.

Rodgers, J.

This action is a dispute over the custody of a minor child between the maternal grandparents, appellees here, on one side, and the father and paternal grandparents of the child, appellants, on the other side. It originated in the Chancery Court of Lafayette County, Mississippi, wherein appellees brought an original bill to modify a

*habeas corpus* judgment previously rendered with the consent of all parties at a former term of the chancery court. The controversy arose under the following circumstances: J. W. Mitchell, Jr., appellant, while yet a minor, met and married Harriett Powell, also a minor. She was the adopted daughter of appellees, Mr. and Mrs. H. E. Powell. To this union was born a daughter, Phyllis Gail Mitchell. Thereafter, on the 28th day of November 1961, these young people were divorced, and the mother, Harriett Powell Mitchell, was awarded the care and custody of the little girl, Phyllis Gail. In order to find work and support herself, the mother went to Jackson, Mississippi, where she lost her life in an automobile accident on July 30, 1963. From the time of the divorce until the time of the death of Harriett Powell Mitchell, her little daughter remained in the home of the adoptive parents of Mrs. Mitchell, the appellees, Mr. and Mrs. H. E. Powell.

On September 6, 1963, J. W. Mitchell, Jr. filed a petition for a writ of *habeas corpus* in the Chancery Court of Lafayette County against the appellees, seeking custody of Phyllis Gail. Appellant's parents, Mr. and Mrs. J. W. Mitchell, Sr., joined in the petition as paternal grandparents of the child. An agreed order or judgment was entered by the chancellor in the *habeas corpus* proceeding, whereby the care and custody of Phyllis Gail Mitchell was awarded to the father, J. W. Mitchell, Jr., at the time he lived with his mother and father. Thereafter, on November 27, 1963, J. W. Mitchell, Jr. married Miss Ann Russell. They started housekeeping at Abbeville, a town about eleven miles north of Oxford, and about four or five miles from his parents' home. On May 30, 1964, Mr. and Mrs. H. E. Powell instituted the present action requesting the court to modify the *habeas corpus* judgment. The bill charged in substance that conditions and circumstances, since the said decree of October 23, 1963, had materially changed and that it

was not in the best interest of the said child, Phyllis Gail, to remain in the custody of defendants, J. W. Mitchell, Jr., and Mr. and Mrs. J. W. Mitchell, Sr., because defendant J. W. Mitchell, Jr. had abandoned said child and forfeited his right as the father. He had not given the child the type of home and home life that said child must have, and had not given the child the care, treatment, affection and love that a child of such tender age must and should have, and had not given parental care, and had not performed his duties as a father to said child, and therefore was not a fit, suitable and proper person to have the custody of said child, and that it was in the best interest of said child, Phyllis Gail, that custody be awarded to them.

During the trial, the evidence revealed that H. E. Powell would be fifty-nine in December 1964, that by the time Phyllis Gail would normally finish high school, he would be seventy-two years of age, and by the time the child would normally finish college, he would be seventy-six years of age. Mrs. Powell would be sixty-seven years of age when the child finished high school, and seventy-one when she finished college. Mr. and Mrs. Powell live in the City of Oxford, Mississippi, in a rented house. Mr. J. W. Mitchell, Jr. and wife reside in Abbeville but had not taken the child from Mr. and Mrs. J. W. Mitchell, Sr.'s home to their home at the time the bill of complaint was filed. The testimony showed that Mr. and Mrs. J. W. Mitchell, Jr. had discussed the matter of bringing the child to live in their home, and Mrs. Mitchell, Jr. had agreed to this arrangement. The chancellor thought her agreement was not enthusiastic, and since she was employed away from home, some arrangement would necessarily have to be made for the care of the child, if she continued to work. Mr. and Mrs. J. W. Mitchell, Sr. lived some distance from Oxford, Mississippi, on a farm. Both Mr. and Mrs. Mitchell, Sr. work, and during the time the paternal grandmother

was at work, Phyllis Gail was cared for by a Negro woman who had children about Phyllis Gail's age. The chancellor was of the opinion that both families were good people, and said: "Nobody is questioning that it is a good place for it to be with his parents", (Mr. and Mrs. J. W. Mitchell, Sr.), but the court thought young Mr. Mitchell had "abandoned the child technically and legally and after the court had given her to him." The trial court said: "Now, I think it comes down to this point, and that is whether he complied with that decree or not, and whether or not the conditions have so changed as to justify these people to go back into court and seek to obtain the custody of their grandchild." The court had no criticism whatsoever of the care of the child by Mrs. Mitchell, Sr., and concluded "I don't think young Mr. Mitchell's wife wanted the child when they first married, and I don't know whether she wants it yet or not. . . ." The chancellor decided that since this young father had recently married and moved to another home approximately five miles from his child and had not taken the child to his home, he had abandoned the child. During the trial of the case, evidence was offered by the complainants, Mr. and Mrs. H. E. Powell, to show that the child was very happy when it lived with them before the judgment in the *habeas corpus* proceeding, and that it had a good home and enjoyed playing with children at their home. Objection was made to this testimony on the ground that the *habeas corpus* proceeding settled the right of the custody of the child up to the date of the *habeas corpus* decree rendered on October 23, 1963. At the conclusion of the testimony, the chancellor permitted the original *habeas corpus* decree to be modified so as to change the care and custody of the child from its father to that of the adoptive maternal grandparents. On appeal, the father and paternal grandparents assign as error the holding of the lower court that J. W. Mitchell, Jr. had abandoned Phyllis

Gail; that, in fact, there was no material change in the condition of the child after the judgment on the writ of *habeas corpus,* and the court erred in admitting testimony with reference to the condition of the child and the situation of the parties prior to the *habeas corpus* judgment, upon the ground that the judgment was *res judicata.*

There are other assignments of error, but in view of the conclusion we have reached, we are of the opinion that they have become moot.

## I

The first question for our determination is whether or not testimony should have been introduced with reference to the condition of the child and the situation of the parties prior to the *habeas corpus* judgment.

The original petition for the custody of Phyllis Gail was instituted under Mississippi Code Annotated section 2815 (1956), which is in the following language: "The writ of habeas corpus shall extend to all cases of illegal confinement or detention by which any person is deprived of his liberty, or by which the rightful custody of any person is withheld from the person entitled thereto, except in the cases expressly excepted." Mississippi Code Annotated section 2836 (1956) is in the following language:

"The judgment rendered on the trial of any writ of habeas corpus shall be conclusive until reversed, and, whilst so in force, shall be a bar to another habeas corpus in the same cause, or to any other proceedings, to bring the same matter again in question, except by appeal or by action for false imprisonment; nor shall any person so discharged be afterward confined for the same cause, except by a court of competent jurisdiction."

In the case of Campbell v. Campbell, 159 Miss. 708, 132 So. 334 (1931), Judge Griffith, speaking for this Court, said:

"This leaves for determination only the question whether the judgment of the circuit judge rendered in the habeas corpus proceedings and only a few months before, between these same parties in respect to the custody of their child, is res adjudicata upon that issue in the present cause in the chancery court; there being no allegation or proof of any intervening change in facts or conditions.

"While there are a few cases to the contrary, it is generally held that the doctrine of res adjudicata will apply where the writ of habeas corpus has been used as a means of inquiring into and determining the rights of the parties to the care and custody of their minor child, and where no material change of circumstances is shown to have arisen since the judgment in the habeas corpus proceedings. . . . There is an elaborate discussion of the subject in Dawson v. Dawson, 57 W. Va. 520, 50 S. E. 613, 110 Am. St. Rep. 800 . . . ."

In the case of Yarbrough v. Dunnam, 130 Miss. 669, 94 So. 892 (1922), a judgment on *habeas corpus* proceedings was instituted by R. Y. Yarbrough in which Dunnam and his wife were made defendants. The court awarded "Yarbrough custody of his minor son, Gaston Yarbrough, until the further order of the court." The Dunnams were Gaston's maternal grandparents. Apparently, from the record, his mother was dead. The Dunnams filed a petition with the clerk of the court addressed to the same judge who rendered the judgment before praying that the judgment be set aside, and that they be awarded the custody of Gaston Yarbrough for at least one-half of the time, and setting forth that they had discovered new and additional testimony that they were now able to produce which would show their right to have custody of Gaston Yarbrough. A summons was issued on this petition, and the cause was again tried by the judge. The judge ordered: "it is here now ordered and adjudged that G. R. and Annie Dunnam be

awarded the custody of said Gaston Yarbrough for one week in each calendar month until the further order of the court." On appeal, this Court said: "This case is ruled by Gray v. Gray, 121 Miss. 541, 83 So. 726, and Watts v. Smylie, 116 Miss. 12, 76 So. 684."

In the case of Gray v. Gray, 121 Miss. 541, 545, 83 So. 726 (1920), Judge Smith, speaking for this Court said:

"While this appeal is from an order entered by a chancellor, the jurisdiction of the chancery court, or of the chancellor exercising the powers thereof in vacation, over the subject of custody of children is not here involved; for when inquiring, into the cause of the detention of a child brought before him on a writ of habeas corpus issued pursuant to the provisions of chapter 62, Code of 1906 (chapter 33, Hemingway's Code), a chancellor's powers are those only that can be exercised by the judge of any other court before whom such a writ is returnable, are measured by section 2461, Code of 1906 (section 2027, Hemingway's Code), and are to either set the child at liberty or award its custody to the party entitled thereto. After awarding the custody of a child to the party entitled thereto, the judge in a habeas corpus trial is without power to direct the manner in which such party shall exercise his lawful authority over such child, or to direct that he shall thereafter surrender, though temporarily, the custody thereof to another person. The judge does not merely, because he presided in a habeas corpus trial in which the right to the custody of a person was determined, thereby acquire perpetual jurisdiction over the custody and welfare of such person. When the order entered by him either freeing the person from restraint or awarding his custody to the party entitled thereto has been executed, the judge's jurisdiction in the matter is at an end unless and until it is again invoked by the issuance of another writ of habeas corpus."

In the case of Talley v. Womack, 249 Miss. 773, 163 So. 2d 742 (1964), we said that in a proceeding where the mother's petition for a writ of *habeas corpus* against the father alleged that he illegally withheld custody of the three-year-old female child from its mother, that the evidence was not sufficiently strong on which to base the judgment withholding the custody of the child from the mother and that the *habeas corpus* court had no authority to modify judgment so as to divide custody of the child and retain jurisdiction. In the *Talley* case, we pointed out that:

"This court has repeatedly held that a habeas corpus proceeding is brought in a special court convened to try a single cause and when a final judgment is rendered its functions and powers wholly cease.

"It is said in Bunkley and Morse's Amis, Divorce and Separation in Mississippi, § 8.12 at p. 226 (Note 54) that 'An habeas corpus court is a special court convened to try a single cause, and when its final judgment is rendered, its functions and powers wholly cease. Nor may it by special order prolong its powers and jurisdiction.'

"In Honeywell v. Aaron, 228 Miss. 284, 87 So. 2d 562, 88 So. 2d 558 (Miss. 1956), this Court quoted Amis on Divorce and Separation in Mississippi, § 227, pp. 308-310, (now § 8.14, p. 226, Bunkley and Morse's Amis) as follows: 'A decree or judgment awarding the custody of a child, whether on divorce, separate maintenance, or habeas corpus, is res judicata and conclusive of the facts, and the rights of the parties, existing at the time it was rendered. * * * And no court will modify or change the judgment or decree touching custody, so long as the facts remain substantially the same. * * * The Court then said: 'The only other change, according to the record, is that the appellant, on August 16, 1955, married Honeywell. A second marriage alone was not sufficient

change to warrant the mother's loss of the custody of her daughter.' "

The general rule on this subject may be found in 25 Am. Jur. *Habeas Corpus* section 158 (1940); 17 Am. Jur. *Divorce and Separation* section 816 (1957); Annot., 110 A. L. R. 748 (1957). See also Payne v. Payne, 213 Miss. 815, 58 So. 2d 9 (1952).

It seems that an impression has grown upon the minds of the judiciary and the attorneys of this State that a *habeas corpus* petition filed in the chancery court is not subject to the same rules and regulations as the application for a *habeas corpus* proceeding filed in the circuit court and county court in matters respecting the custody of minors. Although the statutory law of this State (Title 12, Chapter 5, *Habeas Corpus,* Mississippi Code Annotated 1956) sets out the method of procedure in *habeas corpus* proceedings in all courts, the records coming to this Court often ignore the expressed statutory law. For example: Mississippi Code Annotated section 2835 (1956) requires that when the proceedings are begun, and had in vacation, the proceedings shall be deposited with the clerk of the circuit court, but it is apparent this requirement is often ignored when the petition is filed with the chancellor. It is obvious that if the record had been thus filed, the chancellor could not have modified the order once it had left his hands and had been deposited in the records of another court.

We gather from the argument and briefs filed by the attorneys that the foregoing assumption is traceable to, and based largely upon, two cases, namely: Mahaffey v. Mahaffey, 176 Miss. 733, 170 So. 289 (1936), and the *obiter dictum* appearing in Leggett v. Leggett, 202 Miss. 435, 32 So. 2d 189 (1947). In order to clearify the *habeas corpus* proceedings in this State and to dissipate the foregoing growing assumption, it is necessary to briefly discuss the holding of this Court in those cases.

In the outset, it will be noted that the judge who wrote the opinion in *Mahaffey* also wrote the opinion in Camp-

bell v. Campbell, 159 Miss. 708, 132 So. 324 (1931). The *Mahaffey* case does not conflict with the opinion in the *Campbell* case. In *Mahaffey,* there had been a previous decree of the Chancery Court of Simpson County granting the mother a divorce and custody of the child. The father had the child, and "the mother filed a petition styled a petition in habeas corpus, but which was in substance a petition for the enforcement of the decree of November 16, 1934, and was treated as such by the chancellor." The chancellor directed that the child be turned over to the mother as was required by the divorce decree, but the child slipped away from the mother and returned to the father. A second proceeding was instituted to enforce the former decree and for contempt proceedings against the husband. The chancellor decided that the child was incorrigible and sent her to the state industrial and training school. The action of the chancellor was challenged on appeal upon the ground, among others, that the decree was a *habeas corpus* decree and could not be changed or modified. In answer to this contention, this Court said: "We have already mentioned that these petitions, while entitled petitions in habeas corpus, were, in fact and in substance, petitions for the enforcement of former decrees of the court. The technical name given a pleading is immaterial." 176 Miss. at 737-38, 170 So. at 291. The Court then recognized that a former decree in a divorce proceeding could be modified, and thus sustained the decree of the trial court. This case does not violate the statutory requirements in *habeas corpus* proceedings.

In the case of Leggett v. Leggett, *supra,* the Court held that the *habeas corpus* decree would not be modified, and was therefore correct in its conclusion, but the dictum used by the Court does violence to the statutory *habeas corpus* proceedings since it permits the chancery judge to assume jurisdiction of any *habeas corpus* proceeding as if it were a bill filed in the chan-

cery court under the authority expressed by Mississippi Code Annotated section 2743 (1956). It will be noted that in Leggett v. Leggett, *supra,* no previous divorce decree had been entered, which could be changed or modified. The original action was a *habeas corpus* proceeding in Hinds County, and although the Hinds County Chancery Court treated the matter as if it were a bill in chancery, nevertheless a decree was entered, and this settled the custody of the child at the time of the decree. When a divorce bill was later filed in Jones County, and a cross bill was filed asking custody of the minor on the ground that conditions had changed, the *habeas corpus* proceeding was *res judicata* as to custody of the child at the time of the decree. The *habeas corpus* proceeding in Hinds County was not in the nature of a bill to correct a former decree. It was a *habeas corpus* decree, and was final and *res judicata* under the express requirements set out in Mississippi Code Annotated section 2836 (1956), and this is true notwithstanding any *dictum* contained in *Leggett* to the contrary. See Cassell v. Cassell, 211 Miss. 841, 52 So. 2d 918 (1951).

In further effort to separate the statutory *habeas corpus* proceeding from the custody of children under the authority of the chancery court, we call attention to Mississippi Code Annotated section 2743 (1956), wherein it is said:

"When a divorce shall be decreed from the bonds of matrimony, the court may, in its discretion, . . . make all orders touching care, custody . . . of the children . . . and the court may afterwards, on petition, change the decree, and make from time to time such new decrees as the case may require."

It is not necessary to cite the many cases in this State, wherein this Court has followed this statute and made changes in the custody of children growing out of divorce proceedings.

Although it is true that a petition could not be maintained to modify a *habeas corpus* decree, the

petition in the instant case was properly entertained by the chancery court for the following reasons. The petition asked that the custody of the minor be changed because conditions surrounding the parties had changed since the *habeas corpus* decree, and the prayer of the petition prays for general relief. The application for the custody of a child may be entertained now under a new statute. In 1960, the Legislature changed Mississippi Code Annotated section 1263.5 (1964 Supp.), a part of which is as follows:

"In addition to the right to proceed under section 2743, Mississippi Code of 1942, as amended, and in addition to the remedy of habeas corpus in proper cases, and other existing remedies, the chancery court of the proper county shall have jurisdiction to entertain suits for the custody, care, support and maintenance of minor children and to hear and determine all such matters."

Since the chancery court had jurisdiction under the new law to hear such a petition in the instant case, we will treat the petition as if it were expressly brought under the new statute, in the manner set out in Mahaffey v. Mahaffey, 176 Miss. 733, 170 So. 289 (1936). See also Watts v. Smylie, 116 Miss. 12, 76 So. 684 (1917).

■■ We have reached the conclusion in the instant case that the chancellor was manifestly in error in permitting testimony to be introduced showing all the surrounding circumstances leading up to the first decree in *habeas corpus*. ■■ On the other hand, we are of the opinion that in order to show changed conditions with reference to the custody of a minor, it is not only permissible but is essential that evidence be introduced to show the conditions that existed at the time the former decree was entered so as to demonstrate the change, or lack of change, in the circumstances of the parties since the former decree. 25 Am. Jur. *Habeas*

*Corpus* § 158 (1940); Sheehy v. Sheehy, 88 N. H. 223, 186 A. 1 (1936), 107 A. L. R. 635 (1937).

## II

■■■ ■ We are in accord with the broad contention of the appellees that "The polestar in such an inquiry (custody of children) is the interest of the child." Glidewell v. Morris, 89 Miss. 82, 42 So. 537 (1906). We have often so held. Bland v. Stoudemire, 219 Miss. 526, 69 So. 2d 225 (1954); Cassell v. Cassell, 211 Miss. 841, 52 So. 2d 918 (1951); Cole v. Cole, 194 Miss. 292, 12 So. 2d 425 (1943); Davis v. Davis, 194 Miss. 343, 12 So. 2d 435 (1943); Haynie v. Hudgins, 122 Miss. 838, 85 So. 99 (1920); Duncan v. Duncan, 119 Miss. 271, 80 So. 697 (1919); Hibbette v. Baines, 78 Miss. 695, 29 So. 80 (1900), Annot. 51 A. L. R. 838 (1927); Johns v. Johns, 57 Miss. 530 (1879); 25 Am. Jur. *Habeas Corpus* § 155 (1940).

■■■ ■ While the courts generally have recognized the rule that the court will act for the best interest of the child, it is also recognized that the claim of the parents must be considered. In 17 A Am. Jur. *Divorce and Separation* section 821, at page 17, it is said:

"The divorce courts have the power to award custody of a minor child to a stranger to the action, such as a grandmother or an aunt. Nevertheless, where a parent is a proper person to have custody and can provide a reasonably good home, custody will not and cannot be awarded to a stranger to the action against the parent's demand for custody. It is presumed to be for the best interests of the child that it live with its natural parent, unless it is shown that the parent is unfit or has abandoned the child. Moreover, where, in a proceeding for custody, one establishes that he is a parent, a prima facie case for custody is made out of his favor, and the burden is then upon the third person to show that the parent is unfit or has forfeited his right to have custody."

In the case of Hibbette v. Baines, 78 Miss. 695, 703, 29 So. 80 (1900), this Court said:

"Undoubtedly, the father has primarily, by law as by nature, the right to the custody of his children. This right is not given him solely for his own gratification, but because nature and the law ratifying nature assume that the author of their being feels for them a tenderness which will secure their happiness more certainly than any other tie on earth. Because he is the father, the presumption naturally and legally is that he will love them most, and care for them most wisely. And, as a consequence of this, it is presumed to be for the real interest of the child that it should be in the custody of its father, as against collateral relatives, and he, therefore, who seeks to withhold custody against the natural and legal presumption, has the burden of showing clearly that the father is an unsuitable person to have the custody of his child; or that, however moral a man he may be, he has abandoned his child, contributed nothing to its support, taking no interest in it, and permitting it to remain continuously, in the custody of others. . . ."

There are many cases in this State wherein we have held that a parent is entitled to the custody of his child as against collateral relatives or strangers, where he is a fit and proper person to have the care and custody of the child and has not abandoned it, but we will not stop to cite them since the appellees agree that this has been the law since Hibbette v. Baines, *supra,* (1900). Appellees contend, however, that "the criteria as announced in Hibbette v. Baines case is no longer the law in the State of Mississippi." Appellees base this assertion upon the opinion in the case of Drew v. Drew, 249 Miss. 26, 162 So. 2d 652 (1964).

In the *Drew* case, it will be noted that this Court restricted itself solely to the facts in the case then before it. Although we pointed out in *Drew* that

abandonment and unfitness of the parent was not the sole criteria to be used "in determining who is best qualified to have the care of the children in a broken home", we affirmed the holding of the chancellor "at the present time, for the reason the appellant wholly failed to corroborate his testimony that his sister and her husband were willing to welcome into their home the appellant and his two children." We also pointed out that it was to the best interest of the minors for the chancery courts of this State to retain jurisdiction of the children.

This is not a new rule. It is said in 15 A. L. R. 2d *Custody of Child — Right of Nonresident* (1951), at page 463:

"The presumption is that the child's best interests will be promoted by its remaining within the jurisdiction of the court rendering the divorce decree and awarding the original custody, and the burden of proof rests on the party contemplating nonresidence to show that the well-being of the child would be better promoted by its removal to the new residence of the party. When such presumption is not met by such party, the removal of the child from the jurisdiction and award of its custody to the nonresident or intended nonresident will not be permitted."

Our Court has followed this rule heretofore. Stegall v. Stegall, 151 Miss. 875, 119 So. 802 (1929); Duncan v. Duncan, 119 Miss. 271, 80 So. 697 (1919).

The *Drew* case does not change the rule with reference to the right of the parent to the custody of his or her child. The additional guides set out in *Drew* come into play when the parent is not entitled to the custody of his or her child.

### III

■■■ It is generally recognized that in order to modify a custody decree in a divorce proceeding, or to change the custody of children previously awarded under a

former decree or judgment, the new proceeding in chancery, or a new application for *habeas corpus,* must show that there has been a change in the circumstances and conditions surrounding the minors and that it is to the best interest of the minors that their custody be changed. Campbell v. Lovgren, 175 Miss. 4, 166 So. 365 (1936); Watts v. Smylie, 116 Miss. 12, 76 So. 684 (1917).

 ██ In the case at bar, what changes have occurred since the *habeas corpus* decree to show unfitness of the father to have custody of his child? He carried it to his mother and father's home where he was living. It was obviously understood that was where the young father would take his child. The child remained where it was understood that he would take it until the petition herein was filed. It is true that he remarried, and had not taken his child to his new home. On the other hand, it is shown that his wife was working and that she wanted a little time to become adjusted to her new situation, but she testified she wanted the child. Moreover, the testimony shows that the father went to see his child regularly and has had it in his new home on several occasions. The chancellor found as a matter of fact that all of the parties were good people. Can we then say that the father of this child has become unfit to have the custody of his child because he has remarried, or has abandoned it because these young people wanted a little time to adjust? On the contrary, it is obvious that the father has not abandoned this child and that he loves it, and is doing all he can to keep it.

 ██ In the case of Cassell v. Cassell, 211 Miss. 841, 52 So. 2d 918 (1951), we pointed out that the rule which requires the affirmance of a decree of the chancery court when the evidence is conflicting and where such decree is sustained by substantial evidence does not apply. "On this appeal, in review, we sit as chancellors." We are required to pass upon the evidence on this question. Therefore we have reached the conclusion that the decree of the chancery court in the in-

stant case must be reversed, and the custody of Phyllis Gail Mitchell awarded to her father, J. W. Mitchell, Jr.

The decree of the chancery court is hereby reversed and the permanent care and custody of Phyllis Gail Mitchell is awarded to her father, J. W. Mitchell, Jr.

Reversed and rendered.

All Justices concur except *Ethridge and Gillespie, JJ.,* specially concurring.

ETHRIDGE, J., specially concurring:

Only two issues are necessary to the disposition of this case: (1) Was the May 1964 petition of the Powells (appellees) in substance a suit under Mississippi Code Annotated section 1263.5 (1964 Supp.) to adjudicate custody of this child, because of material changes in circumstances since the 1963 habeas corpus judgment? And if so, (2) Did the evidence support the decree of the chancery court finding such material changes, and awarding custody of appellees?

After a lengthy discussion of the law of habeas corpus, the controlling opinion concludes that section 1263.5 was the substantive basis of the suit filed by the Powells. Miss. Laws 1960, ch. 268. I agree with that conclusion, and also with the determination that appellees have not shown a material change in circumstances since the habeas corpus judgment.

These two issues decide this case, so it seems to me that the explanation of the effects of a habeas corpus judgment, in section I of the controlling opinion, is not necessary and is *obiter dictum.* Code section 1263.5 was intended to give the chancery court independent jurisdiction of suits for the custody of minor children. This implements its constitutional power in this respect. Since the controlling opinion holds this to be true, and that appellees' petition falls within the statute, I think, with deference to my brethren, that any discussion of habeas corpus is unnecessary and irrelevant.

*Gillespie, J.,* concurs.