RICHTON TIE & TIMBER Co. *v.* TILLMAN, et al.

No. 40677          March 10, 1958          100 So. 2d 857

June 2, 1958                          103 So. 2d 139

*M. M. Roberts,* Hattiesburg; *Sidney B. Majure,* Richton, for appellant.

*Boydstun & Boydstun,* Louisville, for appellees.

McGEHEE, C. J.

This is the second appearance of this cause on appeal to this Court. The case was formerly here on demurrer in Tillman, et al. v. Richton Tie & Timber Co., cause No. 39,687, reported in 224 Miss. 789, 80 So. 2d 745. The trial court had sustained the demurrer, and we reversed the case on the ground that the allegations of the bill of complaint and the exhibits thereto were sufficient to state a cause of action. It appears from the record on the former appeal that a demurrer was also sustained to an amended bill of complaint in the cause, and that the appeal was granted to this Court from the action of the trial court in sustaining a demurrer of the

Richton Tie & Timber Co. to the said amended bill. There was at that time filed as an exhibit to the amended bill, along with copies of certain forfeited tax land patents, a copy of a lease contract from Mrs. M. E. Hyde to James Eubanks, bearing date of January 1, 1947, which lease indicated on its face that Mrs. M. E. Hyde, the predecessor in title of the appellant Richton Tie & Timber Company in the instant case, was the purported owner of the land in question.

In the instant case there were no exhibits attached to the amended bill of complaint on which this cause was tried, but at page 225 of the record now before us there appears a copy of a deed of conveyance executed November 12, 1928, from H. A. Bouchillon, et al. to John Palmer Tillman conveying certain lands to him "during his life and at his death to his bodily heirs". In the amended bill now before us it is alleged that Mrs. Mabel Tillman, Katie Lee Anderson, Fred Tillman, Mrs. Claudia Mae Gibson and Mrs. Sibil Baine, "all adults and being the sole and only heirs of John Palmer Tillman" are the complainants. Elsewhere in the amended bill it is alleged that John Palmer Tillman was the "husband of complainant Mrs. Mabel Tillman and the father of all other complainants" and that the complainants received the life estate theretofore granted to John Palmer Tillman. As a matter of fact the complainant Mrs. Mabel Tillman, the wife of John Palmer Tillman, could not have been one of his bodily heirs. There are named as defendants to the amended bill of complaint now before us Willis Jones, Mrs. Willis Jones, Mrs. M. E. Hyde, E. L. Hyde, E. L. Woodruff and M. A. Woodruff, the alleged agent of E. L. Woodruff, and Tommy Reed and the Richton Tie & Timber Company. Some of the defendants other than the Richton Tie & Timber Company did not specifically deny that John Palmer Tillman was the father of Katie Lee Anderson, Mrs. Claudia Mae Gibson, Mrs. Sibil Baine and Fred Tillman, but each and

every material allegation of the amended bill of complaint was specifically and categorically denied by the appellant Richton Tie & Timber Company.

On remand of the cause by this Court, no proof was introduced whatever showing who the bodily heirs of John Palmer Tillman were, or as to the relationship of the complainants Katie Lee Anderson, Mrs. Claudia Mae Gibson, Mrs. Sibil Baine and Fred Tillman to the said life tenant John Palmer Tillman. The record now before us contains 238 pages of pleadings, interrogatories and answers to interrogatories, and only 48 pages of testimony. The lease contract of January 1, 1947, entered into by Mrs. M. E. Hyde with James Eubanks, was neither made an exhibit to the amended bill of complaint in the record now before us nor was the said lease introduced in evidence. That lease is the only document or other evidence whereby it was attempted to be shown that Mrs. M. E. Hyde, the immediate predecessor in title of the appellant Richton Tie & Timber Company, was shown to have ever had any connection prior to her purchases at tax sales in 1948 with the land and timber in question, as owner thereof, and we have had to borrow from the record on the former appeal all of the information that we have as to Mrs. M. E. Hyde having ever executed a lease in favor of James Eubanks on January 1, 1947, and it is the only document whereby the complainants base their claim that Mrs. M. E. Hyde was under any duty to pay the taxes on the land which was assessed against Willis Jones for the year 1947, and for which taxes the land was sold to her in April 1948.

Moreover there is no proof in this record that M. A. Woodruff was the agent of E. L. Woodruff or that E. L. Hyde was the agent of his wife Mrs. M. E. Hyde, or that either of them ever undertook to act as such.

Under the ''Findings of Fact and Conclusions of Law'' of the chancellor it is recited that John Palmer Tillman ''went into the possession of all of the lands and held

same, claiming to be the owner thereof as a life tenant with the remainder in his said bodily heirs (referring to the complainants Katie Lee Anderson, Mrs. Claudia Mae Gibson, Mrs. Sibil Baine and Fred Tillman) and that said possession was continuous, obstinate, peaceable, open and notorious for a period of more than ten years'', and that John Palmer Tillman held the title to said lands in adverse possession for life and remainder to his bodily heirs. The findings of fact and conclusions of law then adjudges that Katie Lee Anderson, Mrs. Claudia Mae Gibson, Mrs. Sibil Baine and Fred Tillman, ''all being adults and the bodily heirs of the said John Palmer Tillman''. The above mentioned findings of fact are apparently based solely upon the contention of the complainants and not upon any proof contained in the record. This proof was essential as to the claim of the appellant Richton Tie & Timber Company, which had purchased the timber on the land from Mrs. M. E. Hyde for a cash consideration of $3,250, and which Timber Company had specifically denied each and every material allegation of the amended bill of complaint.

The findings of fact correctly traced the record chain of title to the appellant Richton Tie & Timber Company, except that the court found that there was no deed of record from Willis Jones to Mrs. M. E. Hyde, the immediate predecessor in title of the said appellant, but found that the lease contract (which was neither an exhibit to the amended bill of complaint in the instant case nor was introduced in the evidence at the trial on the merits) gave rise to the presumption of the ownership of Mrs. M. E. Hyde to such an extent that she did in fact own the said property, and that it was her duty to have paid the taxes thereon for the year 1947, and that she therefore obtained no title to the land under her purchase thereof at the two tax sales of September 23, 1953, since the court held that she was the life tenant of the property on January 1, 1947, and the two tax sales

were made for the nonpayment of the taxes for the said year.  The life tenant John Palmer Tillman did not die until August 9, 1953, several weeks prior to the maturity of the tax title of Mrs. M. E. Hyde to the land.

At a time when the land had been conveyed to E. L. Hyde, husband of Mrs. M. E. Hyde, they conveyed the same to one Willis Jones and there was some testimony tending to show that after Willis Jones had held the record title of the land for approximately 8 years he decided to let it go back to E. L. Hyde on account of the fact that he was advised that he could not get a good title thereto.  However, in response to interrogatories, Willis Jones testified that he collected $130 as rent for the land for the year 1947 from Eubanks and that he held a note for the remainder of the rent for that year. The chancellor held that the conveyances to E. L. Hyde and from E. L. Hyde and Mrs. M. E. Hyde to Willis Jones constituted a fraud, and that the action of Willis Jones in letting Mrs. M. E. Hyde have the land back was for the purpose of defeating the rights of the remainder-men.  However, it is undisputed that Willis Jones did not convey the land back to Mrs. M. E. Hyde but told the tenant that if he wanted to rent the land for another year he would have to see E. L. Hyde, that he, Jones, was letting the land go because he could not get a good title to the same.

A good portion of the trial court clerk's part of the record in this case is so dimly written as to be barely legible, and on account of the confused state of this record we have concluded to reverse and remand the case for a further development of the proof.  We can not affirm on the present state of this record.

We have no knowledge of any lease of the land for the year 1947 by Mrs. M. E. Hyde to James Eubanks except by resort to the record on the former appeal, as aforesaid, which is no part of the record in the instant case.  The fraud found to have existed as between E. L.

Hyde and his grantor, and E. L. Hyde and his wife Mrs. M. E. Hyde on the one hand and Willis Jones on the other, is not sustained by clear and convincing evidence, since the testimony of Willis Jones as to what he did with the land is wholly undisputed, and there is no proof that the appellant Richton Tie & Timber Company had any actual knowledge of the alleged fraud between those parties, the only knowledge imputed by the record to said appellant being that the deed in 1928 to John Palmer Tillman conveyed to him only a life estate, and this does not take into consideration Section 9958, Code of 1942, and Hazlip, et al. v. Nunnery, et al., (Miss.) 29 So. 821.

It is contended by appellant that the deed from H. A. Bouchillon, et al., to John Palmer Tillman of November 12, 1928, violated what was then known as the two-donee statute, Section 838, Code of 1942. However, we pretermit any decision on this contention until the same shall have been fully briefed.

██ █ Numerous citations are contained in the brief of the appellees to the effect that exhibits to a bill of complaint are a part of the pleadings and therefore do not have to be introduced, and this is especially true when a bill of complaint is being considered on demurrer, but the rule does not relieve the complainants of introducing in the trial on the merits the documentary evidence upon which they must rely to make out their case. In other words, the complainants must disclose their muniment of title. If they claim through the deed of November 12, 1928, in favor of John Palmer Tillman, and that this conveyance only conveyed to him a life estate with remainder to his bodily heirs, it is necessary that they introduce such deed of conveyance and also make proof that they are the bodily heirs of the life tenant.

As to the appellant Richton Tie & Timber Company the complainants cannot rely upon any apparent admissions made in the answers of other defendants, since the appellant here denied each and every material allega-

tion of the amended bill of complaint, thereby imposing upon the complainants the burden of proving the material facts relied upon.

No point was made until after this appeal reached this Court that the complainants had failed to prove that they were the bodily heirs of John Palmer Tillman. All of the parties seem to have proceeded in the trial court upon the theory that they were such heirs.

Reversed and remanded.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.

## ON SUGGESTION OF ERROR

The Suggestion of Error herein by the appellees in the above-styled cause was assigned to another Judge and was presented by him to the Conference, but the writer hereof wrote the opinion herein which was rendered on March 10, 1958, and made an erroneous statement in the said opinion to the effect that a "lease contract of January 1, 1947, entered into by Mrs. M. E. Hyde with James Eubanks, was neither made an exhibit to the amended bill of complaint in the record now before us nor was the said lease introduced in evidence," due to the following situation:

The record in this case is jumbled and confused. There is no sequence in arrangement. The pleadings are in one part of the record and the exhibits thereto in another. The original briefs, while earnestly advocating the respective contentions of the parties, did not point out perhaps as clearly as they might have done, the portions of the record upon which they depended for their conclusions. At any rate, a combination of circumstances resulted in some erroneous statements of fact. The Court now proceeds to correct these errors and set the record straight:

I. No issue was presented on the question of the "bodily heirs" of J. P. Tillman. The bill charged, in effect,

that the appellees here are such heirs, and the answer did not in fact deny the allegation. Consequently, to all intents and purposes, the allegation was confessed.

2. Actually there was a stipulation that the copies of records exhibited to all pleadings were correct, and none of them were denied. Manifestly then, the deraignment of title, including all of the deeds, the contract of lease and sale between M. E. Hyde and James Eubanks, and all other exhibits in the record were properly before the Court and were admittedly true.

The errors in the statement of the facts having been corrected and the course being now chartered, we proceed to a simple statement thereof, which will lead to the sole question for solution:

On November 12, 1928, H. A. Bouchillon and others conveyed the land in question to John Palmer Tillman "during his life and at his death to his bodily heirs." As such life tenant, Tillman was required to pay the taxes thereon. However, he did not pay the taxes for the year 1931. Consequently, on April 4, 1932, the land was sold to the State for such taxes. No concern need be given to a number of later conveyances because, prior to October 9, 1937, he reacquired title to the land. By so doing, he belatedly redeemed the title from the effect of the tax sale and mesne conveyances, depending thereon. In other words, he recovered his life estate, but no more, in the land. On October 9, 1937, he and his wife conveyed the land, by general warranty, to E. L. Hyde, who, in turn, with his wife, M. E. Hyde, on January 28, 1938, conveyed the land, with general warranty, to Willis Jones, a brother of M. E. Hyde. Actually a life estate only was passed by these conveyances. Thereafter the land was assessed to Willis Jones. The taxes not having been paid for the year 1947, the land was sold therefor on April 5, 1948. M. E. Hyde purchased the same at that time. Deeds therefor were executed to her, and were recorded, on September 23, 1953. On Novem-

ber 10, 1953, the timber deed, signed by M. E. and E. L. Hyde, but acknowledged only by M. E. Hyde, was executed and delivered to Richton Tie & Timber Company, and that instrument was filed for record on September 26, 1955.

The lease contract, so denominated, which was in evidence, dated January 1, 1947, signed and acknowledged by M. E. Hyde, as lessor, and signed but not acknowledged by James Eubanks, as lessee, provided for the lease of this land for a period of three years from that date at a rental of $25 per month. It also provided that "Lessor agrees that should the property be for sale during the term of this lease that the lessee will be given first opportunity to purchase."

E. L. Hyde, the husband of M. E. Hyde, called as an adverse witness and cross-examined, could not explain why his wife executed the lease to Eubanks, if Jones in fact still owned the land. He did not know whether his wife had any interest in it. He admitted that, during this time, and for about five years, he did business in his wife's name, and that title to his property, except the home in Louisville, was in his wife's name. Mrs. Hyde did not testify at all. In answer under oath to interrogatories, Jones said that Eubanks stayed on the land only ten months; that he received $130 and held Eubanks' note for the balance due; that he did not turn the land back to "Everete", evidently meaning his brother-in-law, E. L. Hyde; that he had no recollection of discussing the land with Mr. Bagwell; and that the reason he rented to Eubanks rather than Bagwell was because the former offered more than the latter. But Jones did not testify at all on the trial. Bagwell, who had lived on the place in 1944, 1945 and 1946, testified that when he talked to Jones, in the Fall of 1946, about renting the land, Jones told him that, if he wanted to rent it any more, he would have to rent it from Hyde; that he was getting out of it and turned it back to him; that he could not get a good

title to it and he was going to let him have it back; and that, after talking with Jones, he went to see Hyde, who raised the rent.

Tillman died on August 9, 1953, at which time, the rights of the appellees, as remaindermen, accrued.

■■■ The learned chancellor, in his written opinion, found as a fact that M. E. Hyde and her husband, E. L. Hyde, and Willis Jones connived with each other to defraud the remaindermen out of their title to the property, and therefore declared the title to the land vested in the appellees. The evidence was clearly sufficient, as regards those parties, to warrant such finding. They did not appeal, and of course, that phase of the case is at an end. The Court further held that the recorded instruments afforded such notice that, if pursued, would have led the appellant to a knowledge of the true condition of the title to the land.

There is a vast difference between the situation of the appellant and the Hydes and Jones. The proof showed that the appellant paid full value for the timber. There was no proof that it had any actual knowledge of the matter. Of course, if there was such constructive notice as to put it on inquiry as to the true condition of the title, and it did not pursue the same, it may not, on account of its mistake in failing to do so, now escape the consequences of such failure. The record does not disclose whether the appellees were alert or vigilant, or as to what, if anything they did, following the death of their father on August 9, 1953, to assert their rights.

■■■ The true administration of justice is the polestar of our jurisprudence. In the present state of the record, there is such uncertainty as to whether or not the appellant was an innocent purchaser of the timber for value without notice of the real condition of the title thereto, that the Court hesitates to enter a final judgment either for or against the appellant. The danger of mistake is too great. Under such circumstances,

the Court feels impelled to order a new trial solely on that issue, at which time, the parties may have an opportunity to present such additional evidence as they may be able, and to show whether the appellees were vigilant or not in asserting their rights as remainder-men. It is a rare case that the Court will order such retrial, for it is ''the uniform rule that the chancellor's finding on the facts is reviewable on appeal only when manifestly wrong.'' Griffith's Miss. Chancery Practice, 2d Ed., Section 674, p. 741. ■■ Here, however, the learned chancellor's finding in this regard was a mixed one of law and fact. It has long been the rule in this State that chancellors may, for good and sufficient reasons, remand a case to the docket for further proof and for a full development of the facts in order to ascertain the true merits of the controversy. Sections 595 and 596, Griffith's Miss. Chancery Practice, 2nd Ed., pp. 631-4. ■■ There is authority for the proposition that, in a case such as this, the members of the Court are sitting as chancellors. Eggleston v. Landrum (Miss.), 60 So. 2d 364; Cassell v. Cassell (Miss.), 52 So. 2d 918.

It therefore follows that the suggestion of error should be, and is, overruled.

Suggestion of error overruled.

*Hall, Lee, Holmes* and *Ethridge, JJ.,* concur.