557 So.2d 509 (1990)
Betty H. AUSTIN
v.
William D. AUSTIN.
No. 07-59551.
Supreme Court of Mississippi.
January 24, 1990.
Rehearing Denied March 14, 1990.
Rabun Jones, Howard Dyer, III, Dyer Dyer Dyer & Jones, Greenville, for appellant.
Willard L. McIlwain, Greenville, for appellee.
Before ROY NOBLE LEE, C.J., and SULLIVAN and PITTMAN, JJ.
ROY NOBLE LEE, Chief Justice, for the Court:
Mrs. Betty Austin (Betty) has appealed from a judgment of the Chancery Court of Washington County, Mississippi, terminating alimony in the amount of five hundred dollars ($500.00) per month granted to her in the decree divorcing her and Dr. William Austin (William). She has assigned three errors in the trial below.

Facts
Betty Austin and William Austin had four children as a result of their marriage, i.e., Katherine, Joseph, Gregory and Mary Elizabeth. They were divorced February 18, 1975, and custody of the children was awarded to Betty. William was ordered to pay $500.00 per month alimony to Betty Austin and two hundred fifty dollars ($250.00) per month in support of each child. Subsequently, the child support was modified and increased to the sum of two hundred seventy-five dollars ($275.00) per month per child. William quit paying child support as the children reached eighteen (18) years of age without a decree terminating the obligation.
Betty was awarded exclusive possession of the marital residence, until she remarried, or moved. William maintained the residence for her, paid all taxes, insurance, and provided for necessary repairs on the residence. Those expenses were $1,000 per year insurance, $400.00 per month mortgage payments, and $500.00 per year in taxes.
William remarried two years after the divorce. He adopted his second wife's two children, Theresa and Dennette. At the time of trial, Theresa was attending Baylor University and Dennette was enrolled in a private school in Greenville. Their educational *510 expenses were provided by William at an annual cost of $13,375.00 for Theresa and $2,000 for Dennette.
William also assumed all the educational expenses for his three children who were attending college. The annual costs were approximated as follows: $18,000 for Joseph, a fulltime medical student; $12,829 for Gregory, a full-time veterinary medicine student; and $9,577 for Mary Elizabeth, a full-time student at Mississippi State University. Betty did not contribute to the educational expenses of her children, but did provide clothing, food, etc.
William and Betty both testified that the children stayed with them on weekends, summer break and holidays. Katherine was the only child not in school. She was employed by William in his office and her living arrangements alternated between William and Betty. William purchased six automobiles for his children, which he maintains, and for which he pays all the insurance.
William is an ear, nose and throat physician, associated with Gamble Brothers and Archer Clinic in Greenville, Mississippi. In 1986 and 1987 his gross income was $155,000 and $169,000, respectively. The majority of the increase in 1987 was due to the temporary absence of another specialist, according to William.
The chancellor found that William had a projected deficit in 1988 of $38,000 per year. This was based primarily on the testimony that William had projected monthly living expenses of $7,203.00, along with the projected educational expenses for the five children of $56,681.00 per year.
Betty was employed as a part-time nurse in 1976 with Delta Medical Center. In 1984 she began to work full time, earning $20,727.00 annually. She netted $1,114.00 per month at the time of trial. Her monthly expenses were projected at $1,883.89; thus, her projected monthly deficit was $769.89. Betty's total savings were $1,723.71.
Betty has health problems. She takes medication for high blood pressure and for a high cholesterol count. The high cholesterol is due to a hereditary liver dysfunction. She also has degenerative arthritis.

Law
The three assigned errors will be consolidated to present the single question of whether or not the facts of the case constitute a material change in the circumstances of the parties and whether or not the lower court erred in terminating alimony of the appellant.
In the original divorce decree, the parties agreed upon the following provision:
The complainant's (Betty Austin) obtaining employment shall not be construed a material change in circumstances, so as to warrant a modification of this decree.
The chancellor found that the provision was of "no legal consequence;" that the chancellor may not be precluded from the exercise of the authority conferred upon him by statute to modify alimony based on "material change of circumstances," relying upon Stone v. Stone, 385 So.2d 610 (Miss. 1980). The lower court found a material change in circumstances in that appellant was in good health, making $20,727 annually; that she no longer had children at home; and that she was not required to contribute to the cost of the children's education and maintenance. The lower court did not find that William's financial situation was the basis for modification.
In East v. East, 493 So.2d 927 (Miss. 1986), this Court held that the parties could not by contract deprive the court, or the court deprive itself, of the future authority to modify ordinary periodic alimony. We do not agree that the one provision in the property settlement is effective to deprive the court or other party of the right to modify alimony or support. Here, both parties understood that appellant would qualify for employment as a nurse in the future. William helped Betty obtain certification and contributed to her securing employment.
Without actually deciding the question of modification/termination of alimony presented here on the basis of the provision in the property agreement, supra, we conclude that it is obvious that William is an affluent professional person; that he maintains *511 and has maintained a high standard of living; that he has lavishly supported his children, including the children of his second wife. His claimed monthly living expenses of $7,203.00 exceeds by $1,203.00 the yearly alimony he pays to his first wife, who provided him with four children. See Bridges v. Bridges, 330 So.2d 260 (Miss. 1976).
We are of the opinion that the lower court was manifestly in error when it modified/terminated the alimony provided for appellant. Therefore, the judgment of the lower court is reversed and judgment is rendered here for appellant.
REVERSED AND RENDERED.
HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., dissents without opinion.
ROBERTSON, J., not participating.