572 So.2d 841 (1990)
Joseph Alston BELL
v.
Carolyn Clinton BELL.
No. 89-CA-1108.
Supreme Court of Mississippi.
October 3, 1990.
As Modified on Denial of Rehearing December 12, 1990.
*842 Stephanie L. Denley, William M. Beasley, Mitchell Voge Beasley & Corban, Tupelo, for appellant.
Barry W. Gilmer, Gilmer Law Firm, Jackson, for appellee.
Before HAWKINS, P.J., and PRATHER and ROBERTSON, JJ.
*843 ROBERTSON, Justice, for the Court:

I.
This case presents a matter we see in varying forms and with increasing frequency, viz. incident to a no-fault divorce the parties present to the chancery court a child custody agreement which provides that the child or children must until majority reside in a particular community, usually the one in which the divorcing parents have theretofore lived. Where such agreements are mandatory in form, we consider them contrary to the best interests of the children and direct that the chancery courts of this state withhold approval. Furthermore, and of direct relevance to the case at bar, where such agreements have been approved, we hold that they are unenforceable.
For the reasons set forth below on this and other issues we affirm the judgment of the Chancery Court.

II.
Joseph Alston Bell and Carolyn Clinton Bell were married on February 17, 1973. Joe is a native of Tupelo. Carolyn is from Missouri. Two sons were born of their marriage: Ray Alston Bell, whose birthday was May 27, 1975, and Joseph Clinton Bell (whose nickname is Joc), born on August 5, 1981. Joe owns Bell Insurance, started by his father and mother in 1945, having gone into business with his father in 1974. He also owns Reynolds Hardware Company which is located next door to Bell Insurance. Carolyn is a harpist and pianist, having received her formal training at the University of Mississippi.
On January 6, 1986, Carolyn and Joe separated and in due course they filed for divorce in the Chancery Court of Lee County, Mississippi, asserting the no-fault ground of irreconcilable differences. Miss. Code Ann. § 93-5-2 (Supp. 1986). As required under the law at the time, Carolyn and Joe submitted to the Court an agreement regarding all financial matters and particularly regarding the care and custody of the children. On May 12, 1986, the Chancery Court entered its final decree of divorce incorporating the settlement agreement and providing, in part,
... that husband and wife shall have joint custody of the minor children with the wife having physical custody of the children. That neither the husband nor the wife shall remove the children from the jurisdiction without the express written consent of the other. It being the mutual intent of both parties that the children live in the Tupelo area. This paragraph is not to be construed to prohibit either party from taking or sending the children out of state for holidays, family visitations, vacations and summer camps.
A second section provided two years of alimony for Carolyn:
It is the order of this Court that husband shall pay unto the wife the sum of $700.00 per month as alimony, said payment being deductible by the husband as alimony with said payment to continue until such time as wife dies, remarries, or lives with another man or until the expiration of twenty-four (24) months from the entry of the Decree of Divorce whichever occurs first.
The decree directed that Joe have Carolyn's name removed from a note and deed of trust:
It is the order of this Court that husband shall further take appropriate steps to remove wife's name from the Note and Deed of Trust at The Bank of Mississippi. Said Note and Deed of Trust were for the purchase of Reynolds Hardware Company and shall hold wife harmless from any and all liability existing on the Note and Deed of Trust.
Additionally, the decree provided that Carolyn was to receive $1500.00 in lump sum alimony and use and possession of the couple's home in Tupelo.
On August 18, 1987, the children  Ray was then twelve years old and Joc was then six  attended their first day of fall classes in the Tupelo City Schools. That afternoon, Carolyn picked up the children and left with them with the expressed intention of establishing a new home in Jackson, Mississippi, and enrolling the children *844 in school there. The details aside, Carolyn's course was impelled by not irrational considerations, one economic  employment opportunities for a musician and harpist were reasonably likely to be far greater in Jackson than in Tupelo, and the other social (if not psychological)  Joe was a native of Tupelo and Carolyn was not. Carolyn found particular difficulty in accepting Joe's less than platonic relationship with another woman who was separated from her husband but not yet divorced, none of which did the children much good either.
All of this led the parties back to the Chancery Court of Lee County primarily on the question of custody and the enforceability of the court-approved settlement agreement that "the children live in the Tupelo area." On August 22, 1988, the Court entered a decree maintaining in effect the joint legal custody of the children, see Miss. Code Ann. § 93-5-24 (Supp. 1988), but modifying physical custody so that then thirteen-year-old Ray would live with his father  on grounds Ray had so requested  and then seven-year-old Joc would live with his mother in Jackson. The decree provided elaborately for visitation and vacation arrangements but empowered the parties "to amend or substitute said visitation by agreement ... [in] writing and signed by each party... ."
The Court further ordered that, should it become necessary for Carolyn to relocate her residence, she petition the Court and obtain approval. The Chancery Court denied Carolyn's charge that Joe be held in contempt for his failure to procure her release from the obligations of existing promissory notes, deeds of trust and other instruments held by the Bank of Mississippi.
Joe has perfected an appeal to this Court, and Carolyn cross-appeals.

III.
The principal issue concerns the enforceability of the court-sanctioned custody agreement that until their majority the children should remain in the Tupelo area, period. We have no reported decisions regarding the enforceability of such residence requirements. It is within our actual and judicial knowledge, however, that divorcing spouses are beginning to employ such provisions in varying forms.[1] In at least one case of which we are aware, the parties provided that, upon the custodial spouse's change of residence, custody of the child would revert automatically to the other spouse. See, e.g., Lott v. Lott, 559 So.2d 1051 (Miss. 1990) (memorandum of decision).
We take it as established that settlement agreements entered into by divorcing spouses and judicially approved under our Irreconcilable Differences Divorce Act, Miss. Code Ann. § 93-5-2 (Supp. 1990), become a part of the decree and enforceable as such as though entered by the court following contested proceedings. See, e.g., Newell v. Hinton, 556 So.2d 1037, 1043 (Miss. 1990); Switzer v. Switzer, 460 So.2d 843, 846 (Miss. 1984). Co-existing with this view is the reality that such agreements are frequently the product of arms length bargaining and thus are in the nature of court-approved contracts. See, e.g., Newell v. Hinton, 556 So.2d at 1042; East v. East, 493 So.2d 927, 931-32 (Miss. 1986); In re Estate of Kennington, 204 So.2d 444, 449 (Miss. 1967). Sullivan v. Pouncey, 469 So.2d 1233, 1234 (Miss. 1985) did not alter this view, only recognizing that the statute required at the time a property settlement bearing the chancery court's imprimatur. In property and financial matters between the divorcing spouses themselves, there is no question that, absent fraud or overreaching, the parties should be allowed broad latitude. When the parties have reached agreement and the chancery court has approved it, we ought enforce it and take as dim a view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts. See, e.g., Osborne v. Bullins, 549 So.2d 1337, 1339 (Miss. 1989); Morris v. Morris, 541 *845 So.2d 1040 (Miss. 1989). Even so, we have held the parties may not by contract, court-approved or otherwise, deprive the court of authority to hear a plea for modification of periodic alimony. See Austin v. Austin, 557 So.2d 509, 510 (Miss. 1990); East v. East, 493 So.2d 927, 931 (Miss. 1986).
Provisions for the custody and support of minor children are different. Children of divorcing parents are, in a very practical sense, wards of the court which is by law charged to regard their best interests. Owens v. Huffman, 481 So.2d 231, 244 (Miss. 1985); Tighe v. Moore, 246 Miss. 649, 151 So.2d 910, 917, cert. denied, 375 U.S. 921, 84 S.Ct. 265, 11 L.Ed.2d 164 (1963). In the present context, the legislature has directed that, before approving an agreement regarding child custody or support, the court should satisfy itself that the provisions for the care and maintenance of the children "are adequate and sufficient," Miss. Code Ann. § 93-5-2 (Supp. 1990), and the serious question before us is whether a provision which locks a child into residence in a given community until majority is ever "adequate and sufficient."
There was a time when most of the people of this state spent their entire childhood in a single community. Many still do and no doubt with great profit. But, we put our heads in the sand when we ignore that ours is an increasingly mobile society and that opportunities for social, economic, professional and educational advancement frequently dictate to reasonable persons that they move from one community to another and often from one state to another and this is so for children as for their parents. Indeed, each person enjoys an enforceable right to travel grounded in the federal constitution. See, e.g., Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 902-03, 106 S.Ct. 2317, 2320, 90 L.Ed.2d 899 (1986); Zobel v. Williams, 457 U.S. 55, 102 S.Ct. 2309, 72 L.Ed.2d 672 (1982); Edwards v. California, 314 U.S. 160, 183, 62 S.Ct. 164, 171, 86 L.Ed. 119 (1941).
Joe makes clear that he does not question Carolyn's right to move to Jackson or anywhere else, for that matter. He objects only to her taking the children with her. No doubt the court-approved agreement says that she may not, and, if it is enforceable, Joe's claim must prevail. We regard it presumptuous for anyone, court or otherwise, to declare as an absolute that it is in the best interest of a young boy or girl that he or she spend his or her entire minority in a single community. We regard it particular folly to decree in advance  at a time when one child may be twelve and another six  that it will be in their best interest to remain in a given community until they become adults. This is simply something that no individual and certainly no court can know.
Of course, this opinion only addresses court decrees which require the children to live in one particular community in a state. Our chancery courts have authority to retain jurisdiction over parties to a divorce and over minor children whose custody it decrees, see McNally v. McNally, 516 So.2d 499, 502 (Miss. 1987); Covington v. Covington, 459 So.2d 780, 782 (Miss. 1984); Mitchell v. Powell, 253 Miss. 867, 885, 179 So.2d 811, 819 (1965), and, in appropriate cases, to order that those children not be removed from this state absent prior permission of the Court. That the Uniform Child Custody Jurisdiction Act has substantially ameliorated the need for such authority does not affect its existence. We say nothing inconsistent when, as an interpretation and elaboration upon the positive law of this state, decreeing as it does that our Chancery Courts regard the best interests of children incident to the separation and divorce of the parents, we hold that our courts may not require that children be reared in a single community come what may. If courts may not order this, it follows that divorcing parents may not make such agreements which courts are obligated to enforce. If our chancery courts may not approve settlement agreements divesting them of authority to revisit periodic alimony, East, supra; Austin, supra; it follows on principle that they may not approve child custody agreements fixing a child's residence until majority. With reference to the specific problem before us, *846 we direct that our chancery courts refuse to approve any child custody agreement presented under Section 93-5-2 or otherwise which mandates, without exception, that children be raised in a given community. Neither in law nor in fact may we say such agreements make "adequate and sufficient" provision for the care and maintenance of children.
In the proceedings below, the Court held that Carolyn's move to Jackson was a change of circumstances. The Court held that Carolyn should be allowed to move to Jackson and take Joc with her. We are not clear of the basis for this ruling other than the apparent fact that the Court thought it in the best interest of the child to follow his mother. That a parent moves is certainly not per se a material change of circumstances. Spain v. Holland, 483 So.2d 318, 321 (Miss. 1986). In any event, this issue falls within our oft-declared rule that, where the court below has entered the correct judgment, albeit for dubious reasons, we will nevertheless affirm. See Shewbrooks v. A.C. and S., Inc., 529 So.2d 557, 564 (Miss. 1988); Hickox v. Holleman, 502 So.2d 626, 635 (Miss. 1987). We affirm so much of the judgment below as allows Carolyn to remove the child Joc from the Tupelo area.

IV.
Carolyn complains that the Court committed error when it provided that the older child, Ray, would reside with his father in Tupelo. The record reflects that the Chancery Judge conferred with Ray in chambers and found that Ray wished to live with his father. While not bound to respect such expressions, the Court was certainly within its authority in doing so. See Miss. Code Ann. § 93-11-65 (Supp. 1990); Hand, Mississippi Divorce, Alimony and Child Custody § 18-8 (2d ed. 1987). Ray is by this time over fifteen years of age which leaves us even less inclined to disturb the Court's provisions for his custody. Cf. Miss. Code Ann. § 93-13-13 (1972).
We should add that the rules regulating provisions for custody of minor children hardly reflect a policy of encouraging separation of siblings. The contrary is the fact. Sparkman v. Sparkman, 441 So.2d 1361, 1362-63 (Miss. 1983); see also Mixon v. Bullard, 217 So.2d 28, 30-31 (Miss. 1968). The record of proceedings below makes clear that the Court carefully regarded this circumstance and we note that the decree we approve today makes elaborate provision for assuring that Ray and Joc are together as much as is reasonably practicable given their residence in separate communities and their attendance at different schools.

V.
Carolyn next argues that the chancery court erred in failing to find Joe in contempt for not removing her name from a note and deed of trust held by the Bank of Mississippi.
Prior to the divorce, Joe borrowed money from the Bank with which to purchase Reynold's Hardware. The indebtedness was secured by a deed of trust on the family residence. Pursuant to the Divorce Decree, Joe agreed to
take appropriate steps to remove his wife's name from the Note and Deed of Trust at The Bank of Mississippi. Said Note and Deed of Trust were for the purchase of Reynolds Hardware Company and shall hold wife harmless from any and all liability existing on the Note and Deed of Trust.
Following the filing by Carolyn of her original petition for modification, she discovered her name had not been removed from the note and deed of trust. She amended her petition seeking to require Joe to have her name removed and to hold Joe in contempt for his failure to have already done so pursuant to the decree. The outcome determinative testimony was given by Robert Aycock, First Vice President of The Bank of Mississippi. Aycock testified that Joe came to the bank and requested of him that Carolyn's name be removed from the note and deed of trust. Aycock presented Joe's request to the bank's loan committee which decided to *847 deny the request and retain Carolyn's name on the note and deed of trust.
Among the recognized defenses to a charge of contempt is an existing and honest inability to perform the dictates of the decree. Smith v. Smith, 545 So.2d 725, 727 (Miss. 1989); Prestwood v. Hambrick, 308 So.2d 82, 85 (Miss. 1975).
The Bank loan committee's refusal to release Carolyn from the note and deed of trust can be nothing but an honest inability to comply with the dictates of the decree. Joe attempted, through his best efforts, to meet requirements of the decree, but by no fault of his own he was prevented. Carolyn's proof suggests no collusion or fraud. On these facts, the Chancery Court was not only well within its discretion in refusing to find Joe in contempt, such a finding would have been an abuse of that discretion.

VI.
Carolyn further complains that before she may move her residence she must obtain Court approval thereof. The Court's order is directed more to the residence of the child than of Carolyn herself. We hold this provision of the order erroneous and unenforceable. It is an incident of custody that the parent having physical custody provide a residence for the child where he or she thinks appropriate. The location of this residence is a matter committed to the discretion of the custodial parent in the first instance. See Clements v. Young, 481 So.2d 263, 267 (Miss. 1985).
Having in mind that a change of residence per se is not a change of circumstance, see e.g., Stevison v. Woods, 560 So.2d 176, 180 (Miss. 1990); Spain v. Holland, 483 So.2d 318, 321 (Miss. 1986), the judicial hand may only intervene where there has been a material change of circumstances which adversely affects the child and where it is shown that the best interests of the child require a modification of custody. See Phillips v. Phillips, 555 So.2d 698 (Miss. 1989); Tucker v. Tucker, 453 So.2d 1294, 1297 (Miss. 1984).
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.
DAN M. LEE, P.J., not participating.
NOTES
[1] Attorneys may be utilizing forms provided in sources such as Joint Custody and Shared Parenting (J. Folberg ed. 1984) or A. Lindey and L. Parley, Lindey on Separation Agreements and Antenuptial Contracts (1989), from which to glean these provisions.