734 So.2d 213 (1999)
Cynthia Louise (Mitchell) AYERS, Appellant,
v.
Jimmy George AYERS, Appellee.
No. 97-CA-01148-COA.
Court of Appeals of Mississippi.
January 26, 1999.
*214 Samuel J. Waits, Grenada, Attorney for Appellant.
Mitchell M. Lundy, Jr., Grenada, Attorney for Appellee.
BEFORE BRIDGES, C.J., PAYNE, AND SOUTHWICK, JJ.
PAYNE, J., for the Court:

PROCEDURAL HISTORY
¶ 1. Cynthia Louise Ayers and Jimmy George Ayers were married on December 16, 1993, in Carroll County, Mississippi. The couple separated on January 31, 1997. Two children were born from this union.
¶ 2. Cynthia filed a bill of complaint for divorce on March 24, 1997, on grounds of habitual cruel and inhuman treatment. She also asked for paramount care and custody of the children. Jimmy filed his answer stating that Cynthia was not entitled to a divorce and filed a cross-complaint for separate maintenance.
¶ 3. The chancery court denied the divorce sought by Cynthia and denied the separate maintenance sought by Jimmy. The chancery court gave both parties joint legal custody of the children, with primary custody awarded to Jimmy. No child support was granted to either party and the chancery court ordered that the children were to attend school in Grenada County, Mississippi. Cynthia was also prohibited from removing the children from the State of Mississippi unless she posted a $1,000 ne exeat bond approved by the sheriff.
¶ 4. Having read the trial transcripts and reviewed the law, we affirm the chancellor in part and reverse and render in part.

FACTS
¶ 5. Cynthia and Jimmy Ayers were married in December 1993. From this union two children were born, James Tyler Ayers and Katherine Brooke Ayers.
¶ 6. Friction grew between Cynthia and Jimmy. Cynthia testified to several problems that she had with her husband. She complained that Jimmy ignored her at times and gave her the "silent treatment." However, Cynthia did intimate on one occasion that Jimmy's actions may have been caused by his long work hours.
A. And it would be a week or so, we would go without talking. And if he did talk to me, he would be angry about something, because he was tired. He was working a lot of hours at work.
Further, she testified that rarely would he ask her for sex. She also indicated that she did not approve of the marital home (hot in the summer, cold in the winter, ants in the yard). Concerning the couples *215 religious beliefs, she stated that she was Baptist and that he attended the Church of Christ. According to her testimony, she felt uncomfortable attending his church.
¶ 7. Cynthia characterized herself as being sensitive and prone to tears. She also stated that she had a nervous stomach and had visited with Dr. Haley[1] about her ailments. Cynthia testified that she visited Dr. Haley once, then she visited Dr. Tarzi.[2]

STANDARD OF REVIEW
¶ 8. Our standard of review is well known. This Court will not reverse a chancery court's findings of fact where they are supported by substantial credible evidence in the record. Anderson v. Burt, 507 So.2d 32, 36 (Miss.1987); Norris v. Norris, 498 So.2d 809, 814 (Miss.1986); Gilchrist Machinery Co. v. Ross, 493 So.2d 1288, 1292 (Miss.1986); Cotton v. McConnell, 435 So.2d 683, 685 (Miss.1983); Culbreath v. Johnson, 427 So.2d 705, 707-09 (Miss.1983); Richardson v. Riley, 355 So.2d 667, 668 (Miss.1978). This fact is as true of ultimate facts as of evidentiary facts. Norris, 498 So.2d at 814; Gilchrist, 493 So.2d at 1292; Spain v. Holland, 483 So.2d 318, 320 (Miss.1986). In other words, this Court will generally affirm a trial court sitting without a jury on a question of fact unless, based on substantial evidence, the court be manifestly wrong. Brown v. Williams, et al., 504 So.2d 1188, 1192 (Miss.1987); Harkins v. Fletcher, 499 So.2d 773, 775 (Miss.1986). This Court must examine the entire record and accept
that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact....
Cotton, 435 So.2d at 685.
¶ 9. Finally, the trial judge, sitting in a bench trial as the trier of fact, has the sole authority for determining the credibility of the witnesses. Hall v. State ex rel. Waller, 247 Miss. 896, 903, 157 So.2d 781, 784 (1963).

ISSUES PRESENTED

I. WHETHER THE COURT ERRED IN DENYING APPELLANT A DIVORCE ON THE GROUNDS OF HABITUAL CRUEL AND INHUMAN TREATMENT.
¶ 10. As her first argument, Cynthia insists that the chancery court erred in denying her a divorce on the grounds of habitual cruel and inhuman treatment. Both parties cited Daigle v. Daigle, 626 So.2d 140, 144 (Miss.1993). In Daigle, the Mississippi Supreme Court stated that in order to establish cruel and inhuman treatment, the evidence produced should prove conduct that:
[E]ither endangers life, limb, or health or creates a reasonable apprehension of such danger, rendering the relationship unsafe for the party seeking relief, or in the alternative, be so unnatural and infamous as to make the marriage revolting to the offending spouse and render it impossible for that spouse to discharge the duties of the marriage, thus destroying the basis for its continuance.
Furthermore, a charge of habitual cruel and inhuman treatment must be proven by a preponderance of the evidence, and the chancellor, as the trier of fact, evaluates the sufficiency of the evidence based on the credibility of the witnesses and the weight of their testimony. Chamblee v. Chamblee, 637 So.2d 850, 859 (Miss.1994).
¶ 11. Cynthia testified that Jimmy gave her the silent treatment. She also stated that he has called her stupid on occasion and sometimes would not listen to her. Cynthia also stated that she suffered *216 from stress. Such conduct she contends entitles her to a divorce on the grounds of habitual cruel and inhuman treatment. Furthermore, Cynthia argued that Jimmy's conduct endangered her health and created apprehension of danger, to such an extent, that she felt the relationship was unsafe. She did state, several times in the record, that Jimmy never physically abused her.
¶ 12. A review of the trial transcripts clearly establishes that this marriage has had problems. However, basing her argument for divorce on marital friction is not legally persuasive. In a case similar to that presented today, the supreme court noted that habitual cruel and inhuman treatment "means something more than unkindness or rudeness or mere incompatibility or want of affection." Smith v. Smith, 614 So.2d 394, 396 (Miss.1993).
¶ 13. With that said, we affirm the chancellor.

II. WHETHER THE COURT ERRED WHEN IT GAVE THE PARTIES JOINT LEGAL CUSTODY OF THE TWO MINOR CHILDREN, AWARDED PARAMOUNT CUSTODY TO THE FATHER, GAVE ONLY TWO DAYS PER WEEK VISITATION TO THE MOTHER, AND FAILED TO PROVIDE CHILD SUPPORT TO THE MOTHER.
¶ 14. Next, Cynthia insists that when the chancellor gave the couple joint legal custody of the two minor children, and awarded paramount custody of the children to the father and gave the mother only two days a week visitation, the court erred. Citing Miss.Code Ann. § 93-5-24(2)(3) (Rev.1994), Cynthia stated that the chancellor erred because such joint custody could only be granted when irreconcilable differences is the ground for divorce. A divorce was not granted in this case and a literal reading of Miss.Code Ann. § 93-5-24(3) (Rev.1994) denotes that "[i]n other cases, joint custody may be awarded, in the discretion of the court...."
¶ 15. Likewise, we disagree with Cynthia's contention that the chancellor erred in awarding paramount custody of the couple's minor children to Jimmy based upon the "best interest of the child" test found in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). In Albright, the supreme court reaffirmed "the rule that the polestar consideration in child custody cases is the best interest and welfare of the child." Id. The supreme court has instructed chancellors, when making custody decisions, to consider the age of the child, the health and sex of the child, the continuity of care prior to the separation, parenting skills and willingness to provide primary child care, employment and responsibilities of employment, physical and mental health and age of the parents, emotional ties of parent and child, moral fitness of parents, the home, school and community record of the child, the preference of the child, stability of the home environment and employment of each parent, and other factors relevant to the parent-child relationship. Id. No one individual factor should carry any greater weight than the other. Id. Finding that the chancellor properly considered and applied the Albright factors, we cannot say he was manifestly wrong in finding that the Ayers' children's best interests would be served by being placed in their father's custody.
¶ 16. The record reflects that Jimmy loved his children, regularly attended church with them, and nurtured each child as best he could. This is not to say that Cynthia was any less of a parent. Even Jimmy noted that she was good to the children. However, in the end, we are left to our standard of review and with that we are constrained by the chancellor's ruling as he was not manifestly in error.

III. ALTHOUGH THE CHILDREN ARE NOT OF SCHOOL AGE AT THIS TIME, THE COURT ERRED IN REQUIRING THE CHILDREN TO ATTEND SCHOOL IN GRENADA COUNTY, MISSISSIPPI.
*217 ¶ 17. According to the appellant, "while this could be considered moot at this point, since the children are not school age and it could be as beneficial to the wife as the father, it does not seem appropriate under the circumstances" to order the children to attend the school in Grenada County, Mississippi.[3] She argues that this ruling by the chancellor is error.
¶ 18. Jimmy argued that he intended to reside in the Grenada County community. Grenada is the place in which he is employeda place where he can support his children. Because the judge granted him paramount custody of the children, he stated it makes sense that his children should be required to attend school in that district when they become the appropriate age.
¶ 19. The Mississippi Supreme Court noted in Bell v. Bell, 572 So.2d 841, 845 (Miss.1990) the following:
Of course, this opinion only addresses court decrees which require the children to live in one particular community in a state. Our chancery courts have authority to retain jurisdiction over parties to a divorce and over minor children whose custody it decrees, see McNally v. McNally, 516 So.2d 499, 502 (Miss.1987); Covington v. Covington, 459 So.2d 780, 782 (Miss.1984); Mitchell v. Powell, 253 Miss. 867, 885, 179 So.2d 811, 819 (1965), and, in appropriate cases, to order that those children not be removed from this state absent prior permission of the Court.
The Bell court also noted that "our courts may not require that children be reared in a single community come what may." Id. at 846. In further qualifying their statement, the justices said that "we direct that our chancery courts refuse to approve any child custody agreement presented under Section 93-5-2 or otherwise which mandates, without exception, that children be raised in a given community." Id. at 846 (emphasis added).
¶ 20. Our society today is a mobile one, and we recognize that opportunity and employment do not necessarily advance themselves in one community. With that understanding and the law found in Bell, we disagree with this mandate by the chancellor requiring the children to attend school in the Grenada school system. We should not and will not place a rigid standard by which Jimmy should abide. If in the best interest of the child, Jimmy may be allowed to enroll his children in another school district if he, as paramount custodian of his children, is required by circumstances or employment to find work in another area of this state.

IV. WHETHER THE COURT ERRED IN PROHIBITING THE MOTHER FROM REMOVING THE CHILDREN FROM THE STATE OF MISSISSIPPI WITHOUT POSTING A NE EXEAT BOND.
¶ 21. Finally, Cynthia argues that the chancery court erred by prohibiting her from removing the children from Mississippi unless she posted a $1,000 ne exeat bond approved by the sheriff.
It is not the purpose of the writ to limit the personal freedom of the party subjected to the writ but to ensure that the orders of the court will not be ignored or the process be thwarted. Due to the nature of these writs, however, they are not generally issued without satisfactory proof that the party will probably vacate or be absent from the reach of the court, and thus, once subjected to such, either the person or the bond in his or her place, must be available to the court and its processes.
N. SHELTON HAND, DIVORCE, ALIMONY AND CHILD CUSTODY § 9-1 (5TH ED.1998).
*218 ¶ 22. The record evidences that on a prior occasion, Cynthia took the children to Kansas without consulting Jimmy. As Cynthia stated:
Q. Okay. And you took the children with you. And, of course, that deprived Mr. Ayers of seeing the children, didn't it?
A. Well, he knew where they are, and he knew where we were going. So, not necessarily. He could have came and saw them.
¶ 23. Understandably, there is evidence that Cynthia might leave Mississippi with the minor children without permission based upon her past action. Thus, we find that the chancellor did not err when he required Cynthia to post a bond. See Roberts v. Fuhr, 523 So.2d 20, 27 (Miss.1987) (stating that a ne exeat writ and bond are designed to insure a "personal performance"). As the chancellor stated, "[N]ow, she is, expressly, prohibited, because she presently has the children with hershe is, expressly, prohibited from removing these children from this State, unless she enters into bond in the amount of $1,000.00. The whole idea of that is, if she takes the children outside the State, she will bring the children back, or forfeit the $1,000.00."
¶ 24. Of course, this is not to say that Cynthia may not herself move to another state. According to the Bell court "each person enjoys an enforceable right to travel grounded in the federal constitution." See Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 902-03, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986).

CONCLUSION
¶ 25. Today we have reviewed this marriage from a legal standpoint. We have noticed the petty actions taken by both parties, and we have perceived the friction that has wedged itself between Jimmy and Cynthia. However, these actions are not sufficient to grant a divorce on the grounds of habitual cruel and inhuman treatment.
¶ 26. The order that the children be educated only in Grenada County is reversed and rendered. Furthermore, the writ of ne exeat is affirmed to insure the return of the children should Cynthia take the children out of the State of Mississippi.
¶ 27. THE JUDGMENT OF THE CHANCERY COURT OF GRENADA COUNTY IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, KING, LEE, AND SOUTHWICK, JJ., CONCUR.
IRVING, J., NOT PARTICIPATING.
NOTES
[1] The record does not disclose Dr. Haley's full name.
[2] The record does not disclose Dr. Tarzi's full name. Also the record does not reveal how many times Cynthia visited with Dr. Tarzi for treatment.
[3] The chancellor was aware that the children were not of school age at the time the chancery court disseminated its opinion. The chancellor stated "[A]nd we are talking about a period of time where it will be some time before these children even go to school." The intent of the chancellor was to have the children attend school in the Grenada County school system.