KING, P.J.,
for the court.
¶ 1. Linda Ann Dalton and Larry Gene Dalton were granted an irreconcilable differences divorce by the Covington County Chancery Court on October 12, 2000. As required by Section 93-5-2(2) of the Mississippi Code Annotated (Rev.1994), the parties executed a property settlement agreement which was approved by the trial court and incorporated into the final decree of divorce.
*587 ¶2. Mr. Dalton alleges that the trial court improperly modified the property settlement agreement subsequent to the entry of the final decree.
FACTS
¶ 3. The Daltons were divorced on October 12, 2000. As a part of their divorce, a property settlement agreement was executed which allowed Mrs. Dalton to purchase several jointly owned real properties from Mr. Dalton.
¶ 4. The relevant portion of the agreement provided:
A. Real Property
That the parties own the hereinafter described land is [sic] situated in Cov-ington County, Mississippi, to-wit:
TRACT I: Commence at the Southeast Corner of the NW/4 of the SWVi of Section 27, Township 9 North, Range 17 West and Run North on and along the Eastern boundary line of said forty for a distance of 209 feet to and for the point of beginning; thence continue North on and along the Eastern boundary line of said forty for a distance of 1,111 feet to the Northeast corner of said forty; thence run West on and along the North boundary line of said forty for a distance of 209 feet; thence run South for a distance of 1,111 feet more or less, to a point 209 feet North of the South boundary line of said forty; thence run East 209 feet to the point of beginning; containing 5.3 acres, more or less and being in the NW/4 of the SW¡4, Section 27, Township 9 North, Range 17 West, Covington County, Mississippi.
TRACT II: Commence at the SE Corner of the NW/4 of the SW?4 of Section 27, Township 9 North, Range 17 West, and run West for a distance of 209 feet to and for the Point of Beginning; thence run North for a distance of 209 feet; thence run West for a distance of 263 feet; thence South for a distance of 319 feet, more or less, to the Northern boundary line of old Mississippi Highway No. 35; thence run in an Easterly direction on and along the Northern boundary line of old Mississippi Highway No, 35 to a point due South of the Point of Beginning; thence run North for a distance of approximately 100 feet to the Point of Beginning; containing 2 acres, more or less, and being situated in the NW/4 of SW]4 and SWJ4 of SW}4 of Section 27, Township 9 North, Range 17 West, Coving-ton County, Mississippi.
TRACT III: Beginning at the Southeast corner of the NW% of the SW]4, Section 27, Township 9 North, Range 17 West, thence run North 209 feet; thence run West 209 feet; thence run South 249 feet to the North boundary of a local paved road; thence run North 84 degrees, 32 minutes East 209.95 feet on and along the North boundary of the local road; thence run North 20 feet to the point of beginning, containing 1.14 acres more or less, and being in the West/6 of the SW]4 of Section 27, Township 9 North, Range 17 West, Covington County.
*588 TRACT IV: Lot 19, Block 48, Sherwood Forest Part # 5, a subdivision according to a map or plat on record in the office of the Chancery Clerk of Rankin County, Mississippi.
1. That the hereinabove described land shall be appraised and that Arnold Mooney of Collins, Mississippi, shall appraise said property and the parties shall each pay Arnold Mooney one-half of the costs of the appraisals. That Wife shall have the right to purchase Husband’s interest in Tracts I, III, and IV, for one-half of the equity therein or one-half of the appraised value thereof less all sums owed thereon. That Wife shall have sixty days from the date of said appraisal to purchase Husband’s interest in said property and if within said sixty days Wife does not purchase Husband’s interest in said property, then Husband shall have sixty days from said date thereof within which to purchase Wife’s interest in said property. If Husband does not purchase Wife’s interest in said property within said 60 day period then said property shall be sold and the proceeds divided equally between the parties, subject to the lien thereon.
2. That Husband shall have the right to purchase Wife’s interest in Tract II of the hereinabove described land for one-half of the appraised value thereof less all sums owed thereon and Husband shall have sixty days from the date of said appraisal within which to purchase Wife’s interest in Tract II of the herein-above described land. That if Husband does not purchase Wife’s interest in said Tract II within sixty days from date of said appraisal then Wife shall have the right to purchase Husband’s interest in said land within sixty days thereof. If Wife does not purchase Husband’s interest in said land during said period that the land (Tract II) shall be sold and the proceeds divided equally between the parties.
3.That upon tender of a check for one-half of the appraised value thereof less the liens thereon to the other person, (subject to the medical bills as set forth in VI. A. 1.) that said person selling said property shall execute a Quitclaim Deed and convey to the other person, his or her undivided interest therein.
Pursuant to that agreement, Mrs. Dalton was given the option to purchase Mr. Dalton’s interest in tracts I, III, and IV, for one-half of the net equity therein or one-half of the appraised value less all sums owed. She was required to complete the purchase within sixty days from the date of the appraisal. If she did not do so, Mr. Dalton had sixty days from the expiration of that period, to purchase Mrs. Dalton’s interest in the property. If Mr. Dalton failed to complete the purchase within the required time, the property was to be sold and the proceeds divided equally between the parties.
¶ 5. Mrs. Dalton secured a real estate loan to purchase Mr. Dalton’s interest. The loan was slated for closing on November 27, 2000. At closing, the parties disagreed on what deductions[1] were to be *589 made from the loan proceeds as obligations of Mr. Dalton. As a result, the parties were unable to complete the purchase as required.
¶ 6. In December 2000, both parties filed contempt petitions alleging a failure to abide by the property settlement agreement. The chancellor heard testimony on the contempt motions on January 19, 2001, and rendered a bench opinion at the conclusion of the hearing.
¶ 7. The chancellor declined to hold either party in contempt, but felt it appropriate to clarify what deductions were to be taken from the sale proceeds to Mr. Dalton under the decree.[2] This bench ruling was affirmed in an order dated March 8, 2001, and an order denying rehearing dated May 14, 2001.
¶ 8. The chancellor determined that Mrs. Dalton had attempted in good faith to complete the purchase, and allowed her an additional fourteen days from January 19, 2001, within which to complete it.
ISSUE AND ANALYSIS
Whether the chancellor erred by rewriting the parties’ property settlement agreement which was a valid unambiguous contract.
¶ 9. Mr. Dalton contends that in allowing Mrs. Dalton an additional fourteen days to complete the purchase, the chancellor rewrote the property settlement agreement, and thus committed error. He suggests that, contrary to the chancellor’s finding, Mrs. Dalton did not act in good faith in seeking to deduct various items from the sale proceeds due to Mr. Dalton.
¶ 10. An appellate court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his discretion or was manifestly wrong, or the judgment was clearly erroneous, or an erroneous legal standard was applied. Dilling v. Dilling, 734 So.2d 327 (¶ 22) (Miss.Ct.App.1999).
*590 ¶ 11. In his ruling, the chancellor found that both parties had a good faith misunderstanding of the terms of the agreement and that Mrs. Dalton had attempted to close the loan, “even though she wrongfully felt that there ought to be certain deductions.”
¶ 12. The supreme court has stated that when the parties have reached agreement and the chancery court has approved it, we ought to enforce it and take as dim a view of efforts to modify it, as we ordinarily do when persons seek relief from their improvident contracts. Bell v. Bell, 572 So.2d 841, 844 (Miss.1990). However, where ambiguities may be found, the agreement should be construed much as is done in the case of a contract, with the court seeking to gather the intent of the parties and render its clauses harmonious in the light of that intent. Switzer v. Switzer, 460 So.2d 843, 846 (Miss.1984) (citations omitted).
¶ 13. The record supports the chancellor’s finding that a good faith misunderstanding existed between the parties as to the effect of the property settlement agreement. It was therefore appropriate for the chancellor to resolve those ambiguities, and give the parties an opportunity to effect the intended purpose of the contract. The chancellor did not abuse his discretion, and this matter is affirmed.
¶ 14. THE JUDGMENT OF THE CHANCERY COURT OF COVINGTON COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., LEE, IRVING, MYERS, CHANDLER AND BRANTLEY, JJ., CONCUR. BRIDGES, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS, J.

. Mrs. Dalton claimed the proceeds to Mr. Dalton should be reduced by the following deductions:
one-half equity $ 29,466.00
¡4 lot value $ 400.00
less value 2 acres $ 2,200.00
less'/4 closing costs $ 1,113.00
less ’4 tax & escrow refund to Lariy $ 500.00
less quilt $ 2,000.00
less 2 house payments and late fees $ 625.00
Iess'/ii appraisal $ 325.00
*589 less medical bills $ 800.00
less damage to house $ 1,000.00
less personal items missing from house $ 1,000.00

. Judge Buffington resolved the issue of deductions from sale proceeds by saying: I'm going to allow Ms. Dalton to tender to Mr. Dalton the sum of $26,439.46. Coming to this figure, one-half of the equity is $30,466.47. He was also purchasing a lot which was $400. That’s $30,866.47 that he would be entitled to. I’m deducting the $2200 which was half the value on the two acres that he’s getting that he will get at this date. I'm deducting the $625 for the payment on the house. He was living in the house at the time. And therefore that even though it may not have been a proper motion at that time, it's proper now so I'm going to make it that way so we can cure all of this. The appraisal fee was $300. It would [sic] $600 according to what was tendered instead of the 650 as this shows. So I’m going to allow him a deduction of $300 to be paid to Mr. Mooney. And the decree does say that the $800 — and that is one thing that I noticed on Mr. Shoemake’s demand that she tender on the [sic] closing the full amount without any deductions. The Court decree is quite explicit that it does allow an $800 deduction. So therefore that $800 will be deducted from the amount that she would have owed. And then there was the tax and the escrow refund. So therefore based on my figures, there was a total deduction of $4,452 — excuse me. $4,477. That is to be deducted. So that would have been — leaves a balance of $26,439.46 that would be due.
[[Image here]]
Of course, as stated and I think as agreed to, she's entitled to one-half of the CDs a[sic] set forth, plus the interest from the date that the CDs were purchased.
[[Image here]]
The water bill and the electric bill, she testified to that... .So upon her tendering to Mr. Shoemake the bills showing what those amounts were prior to her moving in, ... he’ll pay those two amounts....