SOUTHWICK, J.,
Dissenting.
¶ 32. With respect for the majority, I nonetheless am compelled to dissent. In my view, the chancellor failed properly to analyze some of the unique issues that arise from the long-ago divorce decree affecting what was then an active duty airman and his wife.

1. Ending Alimony.

¶ 33. The parties were divorced in 1981. At that time, Louis D’Avignon was serving in the United States Air Force and was earning considerably more than his wife. Because the parties agreed on an irreconcilable differences divorce, neither was declared to be the cause of the break-up of the marriage. Over two decades later, Karen D’Avignon’s income has become significant and larger than that of her former husband, and her estate also is larger. Mr. D’Avignon argues that it is time for alimony to end. Not only was it not ended, the chancellor granted a retroactive increase not requested by the former wife.
¶ 34. The majority finds that alimony should continue despite the precedent of Beacham v. Beacham, 383 So.2d 146 (Miss.1980). The majority concludes that Beacham “is clearly distinguishable.” Alimony was ended in Beacham for reasons much like the circumstances of the present case. The distinction made by the majoiity is the supreme court’s mention that Mrs. Beacham had been the at-fault party. Id. at 148. The recipient of alimony here, Mrs. D’Avignon, was not at fault. It is insignificant, the majority here concludes, that Mrs. D’Avignon has more income than her ex-husband, that she like Mrs. Beac-ham is apparently in good health and with every prospect of continuing to receive her present income, and has a reasonable retirement. In their view, alimony should continue despite no present need solely due to the fact that Mrs. D’Avignon was initially awarded alimony and she was not the spouse who defaulted on her marital obligations.
¶ 35. I have a different view. Alimony is neither a gift nor a penalty. It arises from circumstances and can end when circumstances change. What was unusual about Beacham is that the wife’s adultery that precipitated the divorce usually would have debarred her from receiving any alimony. Id. at 147. Her necessitous circumstances at the time of the divorce justified the exception. Thirteen years later it was shown that the need no longer existed:
*411 At the time of the decrees appealed from, in addition to her substantial income, she had in prospect retirement pay and social security. At the time the divorce decree was entered in 1967, when custody and supervision of the children was left with Mrs. Beacham, apparently so as not to disturb their existing circumstances, it cannot be said at this date that it was unreasonable for the court, in allowing them to remain with their mother, and directing Beac-ham to make payments for their support, also to award to Mrs. Beacham a sum as alimony in connection with her duties in supervising and looking after the children. It was a matter which can reasonably be considered to have been in the mutual best interest of the parties as well as of the children.
Id. at 147. Not an issue but probably as much a reality in Beacham as here, is that the prospect that Mrs. Beacham would at some stage after the children were grown and before she retired start to earn a sufficient income to support herself in comfort. The Supreme Court concluded that the former wife was in no way dependent for her livelihood upon receiving alimony from Beacham. The divorce effectively and finally dissolved and ended their relationship with each other and with it their reciprocal responsibilities. Unless some reason, based upon public policy, could be pointed out that there was a compelling need to require support from her former husband, Mr. Beacham should be relieved of the burden of making further contributions to her. Id.
¶ 36. The most helpful commentator on Mississippi domestic relations law has stated that in Beacham the Supreme Court “laid down the rule that alimony is not to be considered a bounty to which the recipient is entitled indefinitely.... [Ajlimony may be terminated upon a significant change of circumstances, and this might include independent wealth or income of the recipient party along with the lack of any continuing need for the payments _” Hand, Mississippi DivoRCe, Alimony and Child Custody, § 11:3 (6th ed.2003), at 398.
¶ 37. The following precedents which refused to terminate alimony are distinguishable for reasons that support termination here. Austin v. Austin, 557 So.2d 509, 510 (Miss.1990) (paying spouse was affluent; though recipient spouse obtained full-time employment, her income was not able to sustain her in the lifestyle that existed at the time of divorce); Spradling v. Spradling, 362 So.2d 620, 624 (Miss.1978) (alimony is not to penalize a party for “being industrious and endeavoring to accomplish something rather than depend on [another] regardless of future circumstances”); James v. James, 724 So.2d 1098,1104 (Miss.Ct.App.1998) (former wife had an increase in income and a reduction in alimony was justified, but she still needed alimony and outright termination refused). The chancellor and the majority have let the fact that Mrs. D’Avignon was not the spouse who caused the divorce to prevent a fair consideration of whether there is a continuing need.
¶ 38. The majority mentions as well that Mrs. D’Avignon’s greatly increased income was anticipated at the time of divorce. Therefore no unexpected material change in circumstances occurred. There may be some technical correctness in the majority’s use of language in precedents that focuses on whether a change was unexpected. This divorce decree may have been written with the knowledge that the recipient of alimony would in the years ahead improve her financial situation. Yet it could not have reasonably predicted how much income the former spouse would start earning and what the relative finan *412 cial needs and status of the parties would be twenty-five years later. What might also have been expected is that alimony would end due to a remarriage, and the rules governing alimony “anticipate” that eventuality by requiring the end of alimony at that time. Box v. Box, 622 So.2d 284 (Miss.1993). With all that has happened, and not happened, I find it an overly fine line being drawn by the majority between what was at least possible and what would be an unanticipated change in circumstances.
¶ 39. The evidence is strong that Mr. D’Avignon is entitled to have alimony end. I would remand and require the chancellor to take such additional evidence as might be considered appropriate and make findings on whether the purposes of alimony are at an end.

Issues 2 and 3: Chancellor’s idiosyncratic interpretation

¶ 40. The chancellor took Mrs. D’Avignon’s request for a modification in alimony, interpreted the property settlement agreement in a manner different than urged by either party, and ordered a retroactive increase in alimony and payment of the resulting arrearage. I accept the majority’s citation of the general power of trial judges to grant such relief as is appropriate regardless of the request made by a party. That power, though, requires judiciousness in its exercise. I find that the chancellor overreached, or to use the terminology relevant to judges, abused his discretion.
¶ 41. At times, a case simply cannot be decided based on the arguments advanced by the parties without distorting legal principles. My colleagues might well find me an unexpected objector to a judge’s going beyond the requests of the parties, as some might remember occasions when I did the same. E.g., Anderson v. Kim-brough, 741 So.2d 1041,1046 (Miss.Ct.App.1999) (legal principles of deed in lieu of mortgage not raised by either party, but facts invoking that doctrine were admitted). Where I find discretion properly exercised, though, is when a reasonable decision cannot be made within the confines of the legal principles offered or relief requested. In the present case, Mrs. D’Avignon and her attorney were satisfied with the manner in which the escalation of alimony payments had historically been made. The case could easily have been decided applying the unchallenged view of what income was relevant for the increase in alimony. For the chancellor boldly to go where no party had gone before in its argument, when the parties’ interpretation was facially reasonable and the chancellor’s was questionable, was not a proper exercise of discretion on these facts. Importantly, I believe the chancellor actually misinterpreted the provision.
¶ 42. Once the chancellor arrived at a novel view, he applied it without notice to the parties and without an opportunity for Mr. D’Avignon first to address the interpretation. A chance came on motion for clarification, but that may have been too late to affect the chancellor’s settled view. The majority here states that Mr. D’Avignon has no basis to complain as to the surprising action by the chancellor since he was on notice of the property settlement agreement attached to the complaint for modification. Obviously, all litigants knew that the agreement was central to the issues, but no one but the chancellor had addressed the interpretation that he would apply. Again, I am not disputing the existence of the power to do what the chancellor did. I disagree with the validity of the exercise of the discretion here.

4. Alimony escalation clause

¶ 43. Finally, I review the escalation clause itself. The 1981 agreement said *413 this (the brackets identify a hand-written interlineation in the typed agreement):
The child support obligations and the alimony obligations of the Husband are to be adjusted annually beginning with those payments becoming due in January of 1983. The parties agree that the child support obligations and the alimony obligations will increase annually commensurate with any percentage increase in the net earnings (gross earnings minus federal tax, state tax and social security) of the Husband. [Alimony increases will exclude pay increases by rank or longevity.] That is, the net earnings of the Husband for the year 1981 will be compared with the net earnings for the year 1982. If the Husband’s net earnings for the year 1982 are more than his net earnings for the year 1981, then by whatever percentage his net earnings have increased, it will become the obligation of the Husband to increase his monthly child support and alimony payments by a similar percentage. ...
The interpretation that the chancellor initiated was that this agreement required that all income be considered in the annual adjustment and not just the military income. Mr. D’Avignon retired from the Air Force in 1996. He continued to make alimony payments through 2003, which increased when he retired from $220 per month to $550 a month. That larger amount was paid from 1996 until 2003, at least for the majority of the period when he was employed in Saudi Arabia.
¶44. A side issue will first be addressed. Mr. D’Avignon stated that he left his fairly substantial-paying job in Saudi Arabia because of the dangers. The majority finds that to be a voluntary reduction in income for which he deserves no consideration. I disagree. The premium income received by contractors and their employees for assisting the military in dangerous regions of the world, or income that is received for. enduring other forms of hardships, does not in my view grant an entitlement to a recipient spouse for alimony based on that hardship income. Such jobs are often temporary, in part because the hardships are so great. Once the spouse has endured the dangers for the time that he or she is willing to do so, I believe that all a chancellor should examine is what that spouse can otherwise reasonably earn. A court abuses its discretion to insist that a former spouse either be subjected to significant dangers and deprivations in order to maintain income or to bear a financial cost for refusing to continue in that capacity by paying a higher alimony.
¶45. The majority says that the 1981 language is unambiguous and that all income that the paying spouse earns should be considered. Respectfully, I agree with neither position, either as to ambiguity or the best interpretation of the provision. The alimony escalation clause specifically exempts certain income increases from affecting the adjustment. The key provision for interpretation is the hand-written addition to the agreement which I bracketed in the quotation: “Alimony increases will exclude pay increases by rank or longevity.” That is an odd provision. Airmen and other members of the military are paid based on rank and time in service. This means that a captain with ten years of military service is paid more than a lower-ranked individual with ten years, but less than a captain with twelve years in the service. Military members also receive occasional cost of living increases. I find the best interpretation of the provision to be that alimony would be adjusted for costs of living increases but not for the increases that resulted from each new year that the ex-husband served in a particular rank nor from any promotions. The interlineation *414 made this limitation applicable to alimony but not to child support. That distinction suggests that the parties agreed that Mrs. D’Avignon would not receive substantial increases in alimony but the children would be benefitted by all the increased income that he received.
¶46. This interpretation causes me to disagree with the chancellor in several respects. The fairly limited alimony increases that would result from what proved to be fifteen more years of military service and promotions, convinces me that the chancellor’s giving a large jump in alimony because of post-military earnings is inconsistent with the brake on increases that the handwritten and agreed addition to the property settlement provided. The focus on military earnings in the inserted language also makes doubtful to me that nonmilitary earnings were anticipated. This agreement was written solely with military income as its premise. In effect, the chancellor modified the agreement at his own initiative, altering the balance that was struck and giving Mrs. D’Avignon an unanticipated windfall. Income from non-military sources was not anticipated in 1981. Whether such income should be considered would be a matter for a modification based on the argument of a material change in circumstances unanticipated by the parties. Based on this agreement, alimony if it continues should be computed based on military retirement income that is being received.
¶47. I would reverse and remand for further proceedings consistent with these observations.
LEE, P.J., BARNES AND ROBERTS, JJ., JOIN THIS OPINION.